## McNamara, Respondent, vs. McNamara, Appellant.

*December 13, 1900 — January 8, 1901.*

*Physicians and surgeons: Services in consultation: Value: Evidence: Hypothetical questions: Improper conduct of attorneys: Court and jury: Perverse verdict: Excessive damages: Remission of part: New trial.*

In an action by son against father, both being physicians, for plaintiff's services in consulting with defendant in his practice during a period of about six years, the parties were directly in dispute as to the employment and promise to pay, and both were involved in contradictions and had made inconsistent statements. Plaintiff had kept no books and made no memorandum even of a single case in which he had consulted with defendant, but merely gave his estimate of the number of cases and the value of his services therein. Hypothetical questions put to physicians called as experts in respect to value did not cover the material facts, such as the relationship of the parties, the circumstances under which the services were rendered, the time employed, etc. There was much bitterness between the parties, and on the trial there were improper remarks of counsel, offers of incompetent testimony, and improper questions on cross-examination, which had a tendency to inflame the minds of the jury and create a prejudice against defendant. Plaintiff had a verdict for $11,000, which the court reduced to $6,000. *Held,* that the verdict did not represent that calm, fair, and impartial consideration which should characterize the decision of questions of fact; that passion and prejudice probably affected the decision, not merely of the question of damages, but also of the other questions in the case; and that therefore the trial court should have granted a new trial absolutely.

Appeal from a judgment of the superior court of Milwaukee county: J. C. Ludwig, Judge. *Reversed.*

This is a controversy between son and father. Both parties are physicians, practicing in the city of Milwaukee. The plaintiff brings this action against his father to recover the sum of $12,000 for consulting and advising with him in his practice, from January 1, 1892, to October 31, 1897, basing his right to recover upon an express promise by the

father to pay what such services were reasonably worth. The answer is a general denial, with a counterclaim for money advanced by the defendant to pay for advertisements in several Milwaukee papers. The plaintiff replied by way of denial.

The jury brought in a special verdict, in which they found: (1) That plaintiff performed services for defendant between January, 1892, and October, 1897; (2) that about January, 1892, defendant agreed to pay plaintiff for future services to be rendered by him in defendant's business; (3) that plaintiff performed such services pursuant to such agreement; (4) that such services were reasonably worth $11,000. The defendant moved to set aside the verdict and for a new trial on grounds, among others, as follows: That the verdict was excessive, and the result of passion and prejudice, incited by remarks of counsel and by repeated offers of incompetent testimony; that the court erred in instructions to the jury, and failed to give certain instructions requested by defendant; that the court erred in the reception and rejection of evidence; and that the verdict was against the weight of the evidence. Upon consideration of the motion, the court ordered that "the plaintiff either take $6,000, or a new trial will be granted." The plaintiff remitted $5,000 from the verdict, and entered judgment for $6,000 damages and costs. The defendant appeals.

For the appellant there was a brief by *W. J. Turner*, of counsel, and *J. E. Wildish*, attorney, and oral argument by *Mr. Turner*. To the point that it was error to refuse to set aside the verdict because of the improper remarks of plaintiff's counsel in opening the case and his persistent offers of incompetent testimony to influence the jury, they cited *Schaidler v. C. & N. W. R. Co.* 102 Wis. 564; *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 348; *Schillinger v. Verona,* 88 Wis. 317; *Taylor v. C. & N. W. R. Co.* 103 Wis. 27; *Waterman v. C. & A. R. Co.* 82 Wis. 613; *Sasse v. State,* 68

Wis. 530; *Elliott v. Espenhain*, 59 Wis. 277; *Hennies v. Vogel*, 87 Ill. 242; *McDonald v. People*, 126 Ill. 150, 9 Am. St. Rep. 547, and note; *Sutton v. C., St. P., M. & O. R. Co.* 98 Wis. 157; *Scripps v. Reilly*, 38 Mich. 10; *Cleveland P. Co. v. Banks*, 15 Neb. 20; *Tucker v. Henniker*, 41 N. H. 317; *Kinnaman v. Kinnaman*, 71 Ind. 417.

*J. H. Stover*, attorney, and *H. J. Killilea*, of counsel, for the respondent, contended, *inter alia*, that appellant cannot now avail himself of any improper remarks of counsel during the trial, because no objection or exception was taken at the time. *Metropolitan St. R. Co. v. Johnson*, 90 Ga. 500; *Lynch v. Peabody*, 137 Mass. 92; *Heucke v. Milwaukee St. R. Co.* 69 Wis. 401; *Laue v. Madison*, 86 Wis. 462; *Powers v. Mitchell*, 77 Me. 361; *Learned v. Hall*, 133 Mass. 417; *Dowdell v. Wilcox*, 64 Iowa, 724; *Mulcairns v. Janesville*, 67 Wis. 35; *Wegner v. Second Ward S. Bank*, 76 Wis. 250; *Meyer v. Milwaukee St. R. Co.* 90 Wis. 526.

BARDEEN, J.   The controversy herein is between son and father.   Like most family disputes, there is an express affirmation of fact on the one side, and an equally positive denial on the other.   Considerable of the bad feeling and bitterness of the parties was injected into the case.   It came in through improper remarks of counsel, offers of incompetent testimony, and in matters of cross-examination foreign to the issue on trial; all of which had a tendency to inflame the minds of the jury and divert their attention from the actual controversy between the parties.   The defendant was in his seventy-ninth year.   His former wife was dead.   A few years prior to the trial he married again.   In opening the case to the jury, plaintiff's counsel said: " This new relation has hardly taken place until the temperature of the frigid zone came into the house."   Again, referring to a demand made by the plaintiff upon his father for pay, he quotes the father as saying: " My son will not get one

dollar for what he has done, and to avoid paying my son one dollar I will deed every foot of my property I have to my wife, so that if my son does get a judgment he can keep it. He won't be able to collect it." Upon objection by defendant, the court dismissed the matter by reminding plaintiff's counsel, that he was "moving on very dangerous ground." Such language alone might not be sufficiently prejudicial to reverse a case, but, when coupled with other matters hereinafter to be mentioned, it served to create prejudice in the minds of the jury towards defendant. On the trial the counsel asked defendant whether he had not lost all affection for his first wife's children, and whether it was a matter of any concern to him if his invalid daughter was in want or suffering,— matters that were irrelevant to the issue, but having a tendency to create a bad impression against the defendant, although ruled out. Again, on cross-examination of defendant, plaintiff's counsel produced a deed, and sought to ascertain whether he had not, within a short time after the son had demanded a settlement, deeded a long list of property to his wife. At another time he was asked if, on the day he received a letter from the attorney then representing plaintiff, he did not go and make a transfer of his property. In the parley before the jury, counsel stated to the court that such evidence might have some bearing if a man was in the habit of covering up his property. The court promptly ruled out the questions, but he could not strike from the mind of the jury the bad impressions against the defendant. The earnestness of counsel and the partisan feeling engendered on the trial sometimes leads counsel to do things which their sober judgment will afterwards condemn. Many of the questions referred to were not proper as cross-examination, and much of the testimony sought to be elicited was incompetent and immaterial. It had a direct tendency to inflame the minds of the jury and create a prejudice against the defendant. We have men-

tioned these matters as furnishing some ground for saying that the verdict in this case does not represent that fair and impartial consideration which should characterize the decision of disputed questions of fact. *Scripps v. Reilly*, 38 Mich. 10.

Upon the main question in the case, of whether there was an employment and a promise to pay, the parties were directly in dispute. Both were involved in contradictions and had made inconsistent statements. The jury were at liberty to believe whichever they chose. There was some evidence to support the conclusion reached, and, independent of other considerations, we should not be disposed to set aside their conclusion. Upon the question of the value of plaintiff's services, the jury seems to have gone widely astray. The plaintiff kept no books of account. During all the years he claims to have been in his father's employment he never made a memorandum of a single case he treated, or concerning which he counseled or advised his father. His guess was that his father called upon him on the average of four times a week, and that he counseled with him as to four cases at each visit. His estimate was that he advised with his father concerning 1,000 cases each year, and that his services were worth a little less than $2 for each case. He was unable to state what he did in any given case, and had no memorandum or record from which he could determine the number of cases in any one week or month he acted as counsel in. Nor did he have any data or remembrance as to how much time he spent in his father's service. Three physicians were called as experts for the plaintiff, who testified as to the value of his services. Neither one was put in possession of the actual facts in the case, but they were asked a hypothetical question similar to the following: "*Q*. Doctor, if the defendant in this case consulted with the plaintiff in a professional capacity on an average four times a week, and at each consultation discussed four patients on an average,

or say sixteen to eighteen cases a week, and in that consultation the plaintiff would prescribe for the different parties, give advice as to the medicine to be given, how given, and the general treatment, and all such other advice and information as is incident to a consultation for treatment, those cases being of a syphilitic nature and venereal character entirely, or ninety per cent. of them at least, what, in your opinion, would such services be worth per year?" Dr. Violet answered that such services would be worth in the neighborhood of $4,000 per year. He admitted that he had never had any experience in a like situation, but was testifying according to the fee bill fixing rates for consultation. Dr. Carlson had never heard of such an arrangement before, but he would charge $4,160 per year for such services. Dr. Hayes thought from $2 to $5 a consultation would be a reasonable charge. That such testimony was of no value in arriving at a correct conclusion is evident from the fact the hypothetical question did not cover the material facts in the case. The relation of the parties, the circumstances under which the services were rendered, the time employed, the nature and extent of the consultation, and all the circumstances surrounding the service were material in arriving at a reasonable answer. The attempt to apply fee-bill charges to such a situation was absurd, and the trial court evidently thought so when he cut $5,000 from the verdict.

When we come to consider the nature of this testimony in connection with the other matters herein referred to, we cannot resist the impression that the verdict does not represent that calm, fair, and impartial consideration necessary in judicial proceedings. In other words, that it was perverse in the sense that prejudice was aroused against the defendant and that no proper foundation for the recovery allowed is found in the evidence. It is true the trial court cut the verdict, and reduced the recovery to $6,000. That the court had such power is now the settled doctrine in

this state. *Corcoran v. Harran*, 55 Wis. 120; *Gillen v. M., St. P. & S. S. M. R. Co.* 91 Wis. 633; *Donovan v. C. & N. W. R. Co.* 93 Wis. 373; *Taylor v. C. & N. W. R. Co.* 103 Wis. 27; *Baxter v. C. & N. W. R. Co.* 104 Wis. 307. Where it appears with reasonable certainty that the recovery is so excessive as to create the belief that the jury have been misled by "passion, prejudice, or ignorance," the trial court may either grant a new trial absolutely, or give the plaintiff the option to remit the improper excess. But the rule is only applicable in cases where it is clear that the perverse conditions mentioned only affected the amount of the recovery. If it appears that the elements of passion and prejudice may have entered into, and probably did affect, the decision of other questions in the case, the court's duty is to grant a new trial absolutely. Such we believe to be the situation in this case. The evidence shows that the parties are greatly embittered towards each other. The evidence tending to the corroboration of the one or the other is of a vague and shadowy character. The cause of action and the defense depends very largely upon the testimony of the respective parties. The introduction of extraneous or immaterial matters tending to the prejudice of the one or the other might turn the scale either way. Justice demands that the case should be calmly tried and the jury permitted to reach a conclusion upon legitimate and competent evidence alone.

*By the Court.*— The judgment of the superior court of Milwaukee county is reversed, and the cause is remanded for a new trial.