BARTON, Respondent, vs. BRULEY, Appellant.

*September 29—October 20, 1903.*

*Assault: Evidence: Impeachment of witness: Marriage to daughter of party: Hearsay: Character of female as to chastity: Evidence of specific acts: Character of defendant: Proof of other assaults: Cross-examination: Misconduct of attorney: Instructions to jury.*

1. It is never admissible to impeach a witness by showing contradictory statements out of court, having no relevancy to any of the issues.

2. The fact that a witness is married to the daughter of a party, if it may be shown as bearing upon his interest and impartiality, must be proved by direct evidence and not by mere hearsay or admissions of persons not parties to the action.

3. In an action by a female for an indecent assault upon her, evidence of specific acts to show her bad character as to chastity cannot go beyond acts of lewdness which quite necessarily evince looseness in sexual morals; hence, in such a case, evidence that on certain occasions she had purchased beer was properly excluded.

4. The commission of one assault cannot be established by proof of the commission of others; and in a civil action for an indecent assault upon a female, the defendant's character is in no wise in issue.

5. Improper conduct of the plaintiff's attorney in an action for an indecent assault, in persistently putting questions to defendant, on cross-examination, as to prior assaults of a similar nature upon other females, obviously intended to lead the jury to believe that defendant was an habitual debaucher of women, and errors of the court in overruling objections to some of such questions, are *held* to render necessary a reversal of a judgment in favor of the plaintiff.

6. Instructions informing the jury that the evidence as to plaintiff's character and reputation for chastity was material as bearing upon the probability of an assault having been committed upon her, and impliedly excluding its relevancy upon the question of damages, are *held* open to criticism; but whether, in the absence of any request by counsel calling the trial court's attention to the defect or omission, a reversal should follow, is not determined.

APPEAL from a judgment of the circuit court for Clark county: JAMES O'NEILL, Circuit Judge. *Reversed.*

Action for damages for an assault. Plaintiff charged that on an occasion when she went to defendant's office to collect an order on him he seized her in his arms, kissed her, and solicited sexual intercourse, which was refused, and that, after obtaining the money for which she went, she departed. Defendant denied everything of the transaction except her coming to his office and collecting the money. There were no other witnesses of the transaction. Considerable testimony was introduced impeaching plaintiff's reputation both for morality and chastity and for veracity. The jury returned a verdict of $500 compensatory damages and $1,000 punitory damages, which latter element was cut down by the trial court to $100, and plaintiff required to remit the excess, which she did. From judgment for the remaining $600, defendant appeals.

For the appellant there was a brief by *Chas. F. Grow* and *J. R. & C. R. Sturdevant,* and oral argument by *Mr. Grow.*

*Dayton E. Cook,* for the respondent.

DODGE, J. 1. The first error is assigned upon the exclusion of certain evidence. A witness (H.), having testified for the plaintiff, was asked, both to affect his credibility and show interest, whether he was not married to the plaintiff's daughter, and on denial was asked whether he had not stated to one Cunningham that he was so married. Defendant offered to prove by Cunningham that H. did state to him that he was married to plaintiff's daughter, which was excluded. In this ruling there was no error. The testimony of Cunningham was not admissible as impeaching evidence purely, for it is never admissible to attempt to impeach a witness by showing contradictory statements out of court, having no relevancy to any of the issues in the case. 3 Jones, Ev. § 847; *Kaime v. Omro,* 49 Wis. 371, 373, 5 N. W. 838. This is on

the principle that the jury are not at liberty to reject the evidence of a witness because he may have wilfully sworn falsely, unless such wilful false swearing were to some fact material to the issues on trial. Neither could the evidence be admissible to prove the fact of marriage, although that fact might have borne upon the witness's interest and impartiality. If the fact of marriage might be proved for that purpose—as, indeed, the court ruled it might—it must be proved by direct evidence, and not by mere hearsay or admissions of those not parties to the action. Defendant could no more prove this fact by hearsay than any other.

2. Defendant made two offers by different witnesses to prove that on certain occasions plaintiff had purchased beer. The admissibility of such evidence is now asserted as tending to show bad character of plaintiff. The court allowed her character to be attacked upon the subject of morality and chastity, both by proof of reputation and by any specific acts of unchastity or lewd conduct, but ruled that the purchase of beer was too remote. In this respect we think the court was right. While, perhaps, it may be legitimately argued that women of loose morals and promiscuous habits with men are frequently addicted to the use of intoxicants, the converse is not necessarily true—that the purchase, or even the use, of intoxicating liquors, is proof of immorality in other directions. Such acts, to say the worst, are ambiguous, and the line of demarcation between them and quarrelsome habits, use of vituperative language, and many other acts even less suggestive, could not be logically drawn. No case is cited to us which authorizes the idea that a plaintiff may be assailed in court by proof of every fact derogating from the highest degree of modesty of demeanor or propriety. The inquiry at the most cannot extend beyond acts of lewdness which quite necessarily evince looseness in sexual morals. *Ketchingman v. State,* 6 Wis. 426, 431; *Watry v. Ferber,* 18 Wis. 500; *Guleretle v. McKinley,* 27 Hun, 320.

3. The next error assigned is so closely associated with one of the grounds for the motion for new trial that the two can best be considered together. The defendant, upon cross-examination, was asked whether he had been divorced from his wife, which, being objected to, was withdrawn; but another question was put, so worded as to bring out the fact of a prior divorce. That was followed by the question: "Have you ever committed an assault of this kind before?" which being answered "No, sir," a motion was made to strike it out, and overruled by the court. Another question: "Did you, somewhere in the neighborhood of ten years ago, make an assault of the character of the assault here on —— on the streets of Neillsville?" Objected to for the reason, stated by the court, that "ten years ago is very remote." Again: "Q. Did you, some few years ago, while you were not living with your wife, make an indecent assault upon a Mrs. —— in your own store, and keep her in your back room all night?" Answered, "No, sir;" the court declining to rule. Again: "Q. Can you explain the reason why that night after night, after dark, during the time you were there in Cadott, and immediately preceding the time of this alleged assault, you were seen coming from your office after dark on one road and a woman coming down another road from the direction of your office at the same time?" An objection was sustained because not cross-examination, and because the defendant's character was not in issue. Again: "Q. As a matter of fact, it has been your practice, has it not, Mr. Bruley, for the past three or four years, to insult and make indecent proposals to every woman where an opportunity was presented? Is that not a fact?" Objection overruled. Answered, "No." "Q. How many times have the police force of the city been called down to your house here in the last two years to protect your family against your assault?" to which objection was sustained. Nothing is better settled than that the commission of one assault cannot be established by commission of others, and that

in a civil action for an assault such as this the defendant's character is in no wise in issue. *Fossdahl v. State,* 89 Wis. 482, 62 N. W. 185; *Paulson v. State,* 118 Wis. 89, 98, 94 N. W. 771, 774; 1 Jones, Ev. § 147. On the other hand, no irrelevant fact is more likely to have weight with the ordinary jury than that the accused has done similar acts on other occasions. See *Paulson v. State, supra.* Now, upon the trial under consideration, obviously this rule of law was ignored twice by the court in specific overruling of objections to such questions. This error must reverse, unless we can say with reasonable certainty that it could not have worked prejudice. Were there a single question, although bordering on this forbidden territory, which might have been asked in good faith, and as to which the court might merely have made a mistaken ruling, we might think that the negative answer of the witness was enough to exclude the probability of prejudice; but the conduct here of the plaintiff's attorney was such as to exclude any palliation of this error of the court, or to permit us to do otherwise than condemn most distinctly that conduct. Here question after question was put by that attorney which of course he knew, if answered at all, would be answered in the negative, and some of which were so vague and indefinite as to make certain that he had no expectation of proving any such fact, even if he might have hoped that the trial court would permit him to attempt it. But one inference is warranted by such conduct, and that is that the plaintiff's attorney was seeking to insidiously propagate in the minds of the jury a belief that such facts did exist and might be proved but for technical legal objections, and to gain benefit from the suspicion and the antagonism toward the defendant likely to arise from a belief that he was an habitual debaucher of women. Such conduct is not worthy of members of a profession devoted by their oaths, if by no other restriction, to aiding courts in promotion of justice. It never should pass without condemnation and disapproval, though not always

is its effect so obvious as to make necessary reversals of judgment. Similar conduct has been characterized by this court in no uncertain terms in *Buel v. State,* 104 Wis. 132, 135, 80 N. W. 78; *McNamara v. McNamara,* 108 Wis. 613, 84 N. W. 901; *Goodwin v. State,* 114 Wis. 318, 323, 90 N. W. 170. Under the rule of such cases, we cannot sustain a judgment founded upon a verdict which may well have resulted from such misconduct of counsel and erroneous rulings of the trial court as here described.

4. Error is assigned upon certain instructions which substantially informed the jury that plaintiff's character and reputation for chastity were material as bearing upon the probability of the assault being committed upon her. It is not contended that there is any error in what was said, but that the emphasis of the materiality of such evidence to one point impliedly excluded its relevancy upon any other; and it is now urged that it was also material as bearing upon the question of damages. This contention is undoubtedly well founded. *B—— v. I——,* 22 Wis. 372; *Plummer v. Johnsen,* 70 Wis. 131, 35 N. W. 334; *Candrian v. Miller,* 98 Wis. 164, 73 N. W. 1004. We shall not, however, deem it necessary to decide whether the omission of this further idea, in absence of any request by appellant's attorney to challenge the court's attention thereto at a time when it might have been corrected, would of itself work a reversal, since that result follows from other grounds. We agree with counsel for appellant that an omission did occur, which doubtless will not be the case upon another trial. It is, however, due to the trial court that counsel should promptly make known any desire for further amplification upon any subject. Indeed, it has been said that his failure to do so will be construed into such a waiver that he cannot upon appeal be heard to assign error.

5. Error is assigned for the failure of the court to set aside the verdict for want of evidence to support it, amongst other

things.   This we cannot sustain.   The plaintiff and defendant were squarely antagonized to each other as to the principal event, and while other circumstances as well as impeaching evidence might well have warranted the jury in discrediting, in whole or in part, plaintiff's testimony, still that was distinctly a question within the jury's province, and we cannot say that discretion was abused by the trial court in refusing to set aside their conclusion thereon.   The court should, however, upon the motion to set aside the verdict, have considered the misconduct of plaintiff's attorney in cross-examination of the defendant hereinabove referred to, and on that ground have awarded a new trial.   That conduct went not only to questions of damages, wherein it might well have been inflammatory, but also to vilification of the defendant, and must have aided to discredit his testimony before the jury.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.