SCHULTZ, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 1—October 15, 1907.*

*Criminal law and practice: Plea in abatement: Grand jury: Selection: Acts of jury commisioners: Bribery: Indictment: Sufficiency: Trial: Acts and declarations of co-conspirators: Preliminary evidence as to conspiracy: Order of proof: Discretion: Prejudicial error: Instructions to jury: Request for instructions: Innocence: Conduct of counsel: Repeated attempts to ask improper questions: Reputation: Subdivision of particular trait of character in issue: Argument of counsel.*

1. A plea in abatement, and also a motion to quash an indictment, based on the allegation that the jury commissioners of the county did not themselves alone select the list of names from which the grand jury which indicted the defendant was drawn, were *held* properly overruled, although it appeared that the clerk of the court participated in the commissioners' delibera-

tions and proposed names, it also appearing that the final decision was always made by the commissioners themselves unanimously and without the participation of the clerk.

[2. It seems that if it had appeared that the clerk had been allowed to participate in the final determination a serious question as to the legality of the proceedings would be presented.]

3. An indictment for bribery charged that the county *had* and maintained within the county a morgue and city poor buildings; that a proposition was pending before the county board for the purchase of the real estate on which the buildings were situated; that during the pendency of the proposition the defendant offered a bribe to S., a member of the board, in order to influence his official action and induce him to vote in favor thereof, and that defendant paid the bribe to S., who did in fact vote in favor of acceptance of the proposition. *Held*, that the indictment was not open to demurrer on the ground that it failed to state that the county owned the real estate proposed to be sold.

4. In the orderly trial of a case involving a conspiracy the *prima facie* proof of the fact of the existence of a conspiracy should precede the introduction of the acts and declarations of the co-conspirators, although the court may probably in its discretion permit the acts and declarations to be first proven, if such course seems essential to the administration of justice, upon assurance that the proof of conspiracy will be later introduced.

5. In such situation, unless the conspiracy be afterwards independently established, such evidence of the acts and declarations should be stricken out.

6. Whether the proof be sufficient to make a *prima facie* showing of conspiracy is a preliminary fact to be decided by the court, and upon the finding of the court upon this question the admissibility of the evidence as to the acts and declarations of the co-conspirators depends.

7. The mere absence from the record of any statement of a formal declaration of the court that a *prima facie* case of conspiracy had been made does not show prejudicial error, if on appeal the evidence is, as a matter of fact, sufficient.

8. In a criminal prosecution the evidence, stated in the opinion, is *held* to be admissible and to show a conspiracy between defendant and another to commit the offense charged.

9. In a criminal prosecution for bribery of one S., a member of the county board, it was claimed by the state that the crime charged against the defendant was only an integral part of a plan or scheme, participated in by defendant, to corrupt suffi-

cient members of the county board to insure 'the passage of a resolution providing for the sale of county property to a corporation for a fixed sum. The court charged the jury: "Testimony was received on behalf of the state as to bribes claimed by it to have been offered by defendant and one K. at or about the same time to O. S. and A. P., who were also members of the county board, to influence them in their vote or action upon the same measure. The evidence was received solely for the purpose of aiding you in determining the guilt or innocence of the defendant of the crime charged in the indictment in this case. . . . It is for you, gentlemen, to say whether or not this testimony tends to, or does, support the claim of the state, and you will consider it only for the purpose of determining the guilt or innocence of the defendant of the crime charged in the indictment in the case." *Held*, that the instruction was calculated to convey a wrong idea of the proper bearing of the evidence and was prejudicial to the defendant.

10. In order that statements and acts of alleged conspirators in the execution of a common purpose can be properly considered on the question of the guilt or innocence of the accused, it is not enough that the court has determined that a *prima facie* case of conspiracy has been made, but the jury must first be satisfied by the evidence that a conspiracy in fact existed. They cannot use the statements or acts for any purpose until they have determined that fact, and they should be so instructed in unmistakable language.

11. In a criminal prosecution it is not error to refuse a requested instruction: "The law presumes every man innocent, and desires no conviction if the jury, or any one of them, entertains a reasonable doubt of his guilt; for while the jury, or any one of them, entertains a reasonable doubt as to the guilt of the defendant of the crime charged, he cannot, without great violence to his conscience and sense of right, agree upon a verdict of conviction," where the court gives full and accurate instructions on the question of the presumption of innocence.

12. In a criminal prosecution for bribery the district attorney asked a witness whether the defendant offered him a bribe for his vote on another matter, and several times repeated the question in somewhat different form after objection to the question had been sustained. *Held*, that the district attorney was within his right, there appearing no reason to doubt his good faith.

13. While honest attempts in good faith to offer evidence honestly thought to be admissible, even though somewhat persistently made, should not necessarily be held cause for reversal, yet if it appears that questions have been persistently asked for the

purpose of merely creating a prejudice in the minds of the jury, by getting before them by such illicit means facts known to be inadmissible, such conduct may justify reversal.

[14. In a criminal prosecution for bribery defendant introduced evidence in his own behalf tending to show that his reputation for honesty and integrity was good, and the state, in rebuttal, called a witness who, after testifying that he knew defendant's reputation for honesty and integrity and that it was bad, was asked what was his reputation with respect to being a lobbyist and corruptionist, and replied, against objection and exception, "The impression he always made on me, and from what I could hear from everybody, was that he appeared to be the chairman of all the corruptness that there was in the city of M. in regard to boodling and grafting." On motion to strike out the answer as not responsive, the court remarked that so far as the answer was based on the witness's own impressions it was perhaps not responsive, but that the answer might stand. Since the cause must be reversed for other errors, this court does not definitely decide whether it was allowable to so subdivide the general trait of character in issue into specific traits, but simply indicates that upon another trial, if evidence of character be introduced, it would be better to follow the well-beaten paths.]

15. In a criminal prosecution for offering a bribe to a member of a county board to influence his official action, it is not error to exclude evidence of the reputation for honesty and integrity of an alleged co-conspirator, who was not a party to the prosecution, but whose acts and declarations had been admitted in evidence against defendant.

16. Remarks made by the district attorney in the closing argument to the jury in a criminal prosecution, in so far as exceptions were overruled, are *held* not to call for reversal of the judgment.

ERROR to review a judgment of the municipal court of Milwaukee county: A. J. VINJE, Circuit Judge, sitting for A. C. BRAZEE, Judge. *Reversed.*

For the plaintiff in error there was a brief by *Churchill, Bennett & Churchill* and *Lyman G. Wheeler,* attorneys, and *Charles Quarles,* of counsel, and a separate brief by *Mr. Quarles,* and oral argument by *Mr. W. H. Bennett* and *Mr. Quarles.* They contended, *inter alia,* that under sec. 2533a, Stats. (1898), and ch. 90, Laws of 1903, the participation of the clerk of the court in the deliberations of the jury

commission selecting the names of persons to serve as grand jurors was a violation of the spirit and letter of the statutes. *State v. Newhouse,* 29 La. Ann. 824; *State v. Taylor,* 43 La. Ann. 1131; *Barton v. State,* 12 Neb. 260; *Clare v. State,* 30 Md. 163; *Avirett v. State,* 76 Md. 510; *State v. Clough,* 49 Me. 573; *State v. Flemming,* 66 Me. 142; *Gott v. Brigham,* 45 Mich. 424; *Fornia v. Wayne Circuit Judge,* 140 Mich. 631; *Comm. v. Freeman,* 166 Pa. St. 332; *Brown v. Comm.* 73 Pa. St. 321; *McGann v. Hamilton,* 58 Conn. 69; *Steele v. State,* 111 Ala. 32; *Wells v. State,* 94 Ala. 1; *State v. McNamara,* 3 Nev. 70. It not being charged that the county owned the real estate, land, or site, the indictment failed to allege the pendency of any question or matter over which the county board had jurisdiction, and consequently any offer or promise of money, or other thing of value, to a supervisor to influence his action in relation to the matter of selling the real estate described in the indictment, then pending, would not constitute bribery. *Murphy v. State,* 124 Wis. 635; *Gunning v. People,* 189 Ill. 165; *State v. Butler,* 178 Mo. 272; *People v. Jackson,* 95 N. Y. Supp. 286. The repeated attempts of the district attorney, contrary to the repeated rulings of the court, to introduce incompetent, irrelevant, and improper testimony were highly prejudicial to the defendant and deprived him of the right of a fair and impartial trial upon the offense charged against him. *Barton v. Bruley,* 119 Wis. 326, 329; *McNamara v. McNamara,* 108 Wis. 613; *Goodwin v. State,* 114 Wis. 318, 323; *Speliopoulos v. Schick,* 129 Wis. 556, 561; *Hughes v. C., St. P., M. & O. R. Co.* 122 Wis. 258, 271; *Sullivan v. Collins,* 107 Wis. 291, 295–299; *Schillinger v. Verona,* 88 Wis. 317, 323; *Brown v. Swineford,* 44 Wis. 282, 292; *Buel v. State,* 104 Wis. 132, 145. The admission of testimony as to defendant's reputation for being a lobbyist and corruptionist was error, the state being confined strictly to rebuttal testimony, and its inquiry should have been limited strictly to

the question of meeting defendant's testimony as to his general reputation for honesty and integrity. *State v. Viscome,* 78 Vt. 485, 63 Atl. 877; *Brown v. State,* 46 Ala. 175, 184; *Lea v. State,* 94 Tenn. 495; *Griffith v. State,* 90 Ala. 583, 589.

For the defendant in error there were briefs by the *Attorney General, Francis E. McGovern,* district attorney, and *W. A. Hayes,* assistant district attorney, and oral argument by *Mr. McGovern* and *Mr. Hayes.*

WINSLOW, J. The plaintiff in error (hereinafter called the defendant) was indicted and convicted of offering a bribe January 8, 1901, to one Edward F. Strauss, a member of the county board of Milwaukee county, to influence his official actions on a proposition before such board to sell a parcel of real estate on which the county morgue and poor office were then situated to the Milwaukee Electric Railway & Light Company, and he prosecutes his writ of error to reverse the judgment. The errors claimed will be taken up in their order.

1. A plea in abatement was first filed by the defendant to the effect that the jury commissioners of Milwaukee county did not themselves alone select the list of names from which the grand jury which indicted the defendant was drawn, but allowed one A. A. Wieber (who it appears was clerk of the circuit court) to participate in their deliberations, propose names, and advise and assist in the final determination. The issue arising on this plea and the reply thereto was tried by the court, and the testimony showed without substantial dispute that Mr. Wieber, at the request of the commissioners, acted as their clerk, and was present at their meetings and kept its records and lists; that he sometimes suggested names at the request of the commissioners and participated in the discussion as to the fitness of persons whose names were under consideration, but that the final decision was always

made by the commissioners themselves unanimously and without the participation of Mr. Wieber. Upon this state of facts the plea in abatement was overruled, as was also a subsequent motion to quash the indictment based upon the same grounds, and we think these rulings were correct. Doubtless if it had appeared that Mr. Wieber was allowed to participate in the final determination a serious question as to the legality of the proceedings would be presented, but, when it clearly appeared that he did nothing but suggest names and give information as to the character of the persons whose names were under consideration, nothing more than an irregularity appears, which will be deemed immaterial unless it appears probable that prejudice resulted from such irregular action either in the selection of unfit persons or otherwise. *Ullman v. State,* 124 Wis. 602, 103 N. W. 6. There is nothing to indicate that any prejudice resulted here, and hence the rulings of the trial court were correct.

2. A demurrer to the indictment on the ground that it failed to state that the county owned the real estate proposed to be sold was overruled and exception taken. The indictment charged that the county *had* and maintained within the county a morgue and city poor buildings; that a proposition was pending before the board of supervisors for the sale of that certain piece of real estate upon which the buildings were situated; that during the pendency of said offer the defendant offered the bribe to Strauss in order to influence his official action upon said proposition and to induce him to vote in favor thereof.; and that the defendant paid the bribe to Strauss, who did in fact vote in favor of acceptance of the proposition. It seems evident that the crime charged consists in offering a bribe to the supervisor to influence his action on the proposition of purchase. Whether the would-be purchaser would acquire good title or any title cuts no material figure in the quality of the alleged attempt to corruptly influence Strauss' action. A proposition had been

made to the county board to purchase such title or interest as it had in the land, whatever that title or interest was. Official action was to be taken thereon by the board, and an offer to pay a member of the board to vote favorably upon the proposition was to all intents and purposes an offer of a bribe whether the county had good title to convey or no title. The crime is committed when the offer is made with intent to influence official action, and this act is fully charged in the information.

3. The trial court, against objection and exception, admitted testimony given by Otto Seidel, Jr., and August Puls, two other members of the county board of supervisors, to the effect that they were offered bribes by one Anthony Klefisch for the purpose of influencing their official action upon the same proposition for the purchase of the morgue site, and the admission of this evidence is assigned as error. Of course, this testimony could only be admissible against the defendant in the event that the court was of opinion that sufficient evidence *aliunde* had been introduced to establish *prima facie* the fact of a conspiracy between the defendant and Klefisch to bribe members of the board of supervisors, and that the alleged transactions of Klefisch with Seidel and Puls were a part of that conspiracy. In the orderly trial of the case this *prima facie* proof of the existence of the conspiracy should precede the introduction of the acts or declarations of the co-conspirators, for the very plain reason that its admissibility depends entirely on the fact of the conspiracy. The court may probably in its discretion permit the acts and declarations to be first proven, if such course seem essential to the administration of justice, upon assurance that the proof of conspiracy will be later introduced; but in that event the acts and declarations should be stricken out, unless the conspiracy be afterwards independently established. Whart. Crim. Ev. (9th ed.) §§ 698, 698*a; Baker v. State,* 80 Wis. 416, 50 N. W. 518. Whether the proof be suf-

ficient to make a *prima facie* showing of conspiracy is a preliminary fact to be decided by the court, and on the finding of the court upon this question the admissibility of the evidence as to the acts and declarations of alleged co-conspirators depends. *Schutz v. State,* 125 Wis. 452, 104 N. W. 90. It does not clearly appear whether the trial court had this principle in mind, for we find no statement in the record that the court at any time declared that a *prima facie* case of conspiracy had been made. However, if the evidence was as matter of fact sufficient, the mere absence of the formal declaration cannot be held to be prejudicial. It is strongly argued by the defense that no *prima facie* case of conspiracy was made, and this is the question upon which this exception depends. The evidence tending to show confederation or conspiracy between defendant and Klefisch was substantially this: They had been familiar friends for a number of years. Seidel testified that on the evening of February 9, 1901 (final action concluding the sale having been taken by the board January 29th preceding), Klefisch and the defendant came to his house together in the evening and asked him to come out; that he came out on the street; that they all walked together up the street toward Mr. Puls's residence; that Klefisch handed him $450 in bills, which he had before promised him as his reward for voting for the sale, and said that they had had an awful time getting the money, some $7,000 or $8,000; that they had to go to Chicago with a letter from Mr. Pfister to some man there, and they did not get what they expected to get; that defendant was present during the whole transaction and participated in the conversation, although the witness gave no specific remark made by him. With some hesitation we feel obliged to hold here that there was sufficient evidence, if it was believed, to show *prima facie* that defendant and Klefisch were engaged in a common enterprise. If defendant was present at this transaction and saw the

money passed and heard Klefisch state that *they* went to Chicago and got the money, he could not fail to appreciate that he himself was by these remarks implicated in the proceeding, and, if he said no word of denial, the inference that Klefisch's statements involving him were true would be natural and inevitable. His silence under such circumstances would become an admission of his participation and would justify the introduction in evidence against him of the declarations of Klefisch which were made during execution of the common design and until that design was accomplished or abandoned. That design could not be said to be fully accomplished until the corruption fund was paid to its. beneficiaries. *Baker v. State,* 80 Wis. 416, 50 N. W. 518. So we conclude that there was no error in the admission of the evidence in question.

4. In this connection it seems most appropriate to discuss the question of the correctness of the charge given by the court upon the effect of the evidence which has just been considered. The court charged the jury as follows:

"Testimony was received on behalf of the state as to bribes claimed by it to have been offered by the defendant and one Klefisch at or about the same time to Otto Seidel and August Puls, who were also members of the county board, to influence them in their vote or action upon the same measure. The evidence was received solely for the purpose of aiding you in determining the guilt or innocence of the defendant of the crime charged in the indictment in this case, it being claimed by the state that the crime charged against the defendant in this case was only an integral part of a plan or scheme participated in by the defendant to corrupt sufficient members of the county board to insure the passage of the resolution providing for the sale of the county morgue site to the Milwaukee Electric Railway & Light Company for $40,000. It is for you, gentlemen, to say whether or not this testimony tends to, or does, support the claim of the state, and you will consider it only for the purpose of determining the guilt or innocence of the defendant of the crime charged in the indictment in this case."

We have given these instructions (comprising all that was said to the jury on the subject) careful study and consideration and are wholly unable to see how they can be justified. We find nothing to justify the statement that there was testimony tending to show that the defendant offered any bribe to Puls; but, assuming that this minor statement might be passed over as nonprejudicial, we come to the question of the correctness of the general propositions. The law on the subject cannot be said to be doubtful. In order that the statements and acts of alleged conspirators in the execution of the common purpose can be properly considered on the question of the guilt or innocence of the accused, it is not enough that the court has determined that a *prima facie* case of conspiracy has been made, but the jury must first be satisfied by the evidence that the conspiracy in fact existed. They cannot use the statements or acts for any purpose until they have determined this fact. They should have been so instructed in unmistakable language. A man is not to be convicted because others have committed crimes, nor are the acts or words of others in his absence evidence to be considered against him, unless the jury is first satisfied that they are in law his words or acts by reason of a conspiracy between them. Hughes, Instr. to Juries, §§ 760–762; 2 Thomp. Trials, § 2455. The jury were nowhere instructed to this effect, but on the contrary were told that it was for them to determine whether or not this testimony (*i. e.* the testimony of the alleged transactions of Klefisch with Seidel and Puls) tends to or does support the claim of the state. Thus they were affirmatively permitted to consider the testimony as bearing on the defendant's guilt if they thought it tended to or did support the charge against the defendant. They might easily and naturally think this, even though they were not convinced of the existence of a conspiracy. An instruction better calculated to convey a wrong idea of the proper bearing of the evidence or more prejudicial to the de-

fendant, on this important question could not easily be framed.

Another exception relating to the charge may very properly be considered here. The defendant asked that the following instruction be given to the jury, but it was refused:

"The law presumes every man innocent, and desires no conviction if the jury, or any one of them, entertains a reasonable doubt of his guilt; for while the jury, or any one of them, entertains a reasonable doubt as to the guilt of the defendant of the crime charged, he cannot, without a great violence to his conscience and sense of right, agree upon a verdict of conviction."

This instruction was evidently based on the case of *Franklin v. State,* 92 Wis. 269, 66 N. W. 107, where its refusal was held error. The ground of the ruling as explained in *Emery v. State,* 101 Wis. 627, 78 N. W. 145, was, however, the fact that the court nowhere gave any instruction on the subject of the presumption of innocence. In the present case the court gave full and accurate instructions on the question of the presumption of innocence, and hence there was no error in refusing the requested instruction.

5. The state called as a witness one Jungman, who was an alderman of the city of Milwaukee in the year 1900, and, asked him whether the defendant did not offer him a bribe for his vote upon the question of the extension of street railway franchises in January, 1900. An objection to the question being sustained, the district attorney repeated the question in somewhat different form two or three times, and objections to the various questions were sustained by the court and inquiry was abandoned. It is argued by the defendant that this repeated attempt by the state to prove an independent crime was error which of itself should reverse the judgment. We are unable to agree with this contention. Where it appears that questions have been persistently asked

for the purpose merely of creating a prejudice in the mind of the jury, by getting before them by this illicit means facts known to be inadmissible, it may well be that such conduct may justify reversal of the judgment. *Buel v. State,* 104 Wis. 132, 80 N. W. 78; *Barton v. Bruley,* 119 Wis. 326, 329, 96 N. W. 815. But an attempt in good faith to offer evidence honestly thought to be admissible, even though somewhat persistently made, should not necessarily be held cause for reversal. The most learned counsel are not always right in their views of the law of evidence. It is their duty to present their client's case fully, and they have a right within reasonable limits to offer evidence which they think admissible, though the court may think otherwise; and while such offers should not ordinarily be persistently repeated after a distinct ruling there may well be circumstances justifying the attempt to put the matter in a different light by another question. If this is done in good faith—and we see no reason to doubt the good faith here—we think counsel is within his right.

6. The defendant introduced evidence in his own behalf tending to show that his reputation for honesty and integrity was good, and the state, in rebuttal, called one Schwartzburg, who, after testifying that he knew the defendant's reputation for honesty and integrity and that it was bad, was asked what his reputation was with respect to being a lobbyist and corruptionist, and replied, against objection and exception, as follows:

"The impression he always made on me, and from what I could hear from everybody, [was] that he appeared to be the chairman of all the corruptness that there was in the city of Milwaukee in regard to boodling and grafting."

A motion to strike out the answer as not responsive was made, and the court remarked that so far as the answer was based on the witness's own impressions it was perhaps not responsive, but the answer might stand. The general rules

governing the introduction of evidence as to the character of the accused in a criminal prosecution are well understood. The state cannot introduce any evidence of this nature in making its case, but the defendant may prove his good character as a part of his defense, and, when he has done so, the state may by way of rebuttal introduce evidence of his bad character. The proof on both sides consists of the evidence of witnesses who are acquainted with the general reputation of the defendant in the community prior to the alleged offense, and from this acquaintance are able to state what that reputation was. Evidence of specific instances of good conduct or bad conduct is not admissible. The evidence on both sides is restricted to the trait of character which is in issue. Thus in crimes of violence the inquiry is as to the defendant's character for peace and quietness, or his character as a peaceable and law-abiding citizen; in larceny or embezzlement, his character for honesty and integrity; in perjury, his character for truth and veracity; and so on. 1 Wigmore, Ev. § 59. Mr. Wharton, in his work on Criminal Evidence (9th ed. § 60), says that "the character he is entitled to prove must be such as would make it unlikely that he would be guilty of the particular crime charged." This seems only another way of expressing the idea that the evidence must be restricted to the particular trait involved in the crime charged. The general trait of character involved in a charge of offering a bribe is undoubtedly the trait of honesty and integrity, and to this general trait the defendant confined his evidence; but the state, by the rulings complained of, was allowed not only to introduce evidence impeaching this general trait, but to show that he was reputed to be a corruptionist, or, in common parlance, a boodler or grafter. This might be called perhaps subdividing the general trait into specific traits. Is this allowable?

This is a question which has not been specifically treated in any well-considered case which has come to our attention.

Many authorities will be found cited in the note to sec. 59 of Mr. Wigmore's work above cited, and others will be found in sec. 841, in 14 Century Digest; but substantially all of them are to the effect that the evidence must go to the trait involved, and of this proposition there can be no doubt. This, however, is demonstrated from an examination of the authorities, namely, that in crimes involving moral turpitude of this nature it has almost universally been taken for granted by counsel and court that the general character for honesty and integrity is the specific trait concerning which evidence may be introduced. It is true that in *Earley v. Winn,* 129 Wis. 291, 109 N. W. 633, this court with some hesitation sustained the introduction of evidence in a slander action tending to show the general reputation of the plaintiff for quarreling with and ill-treating her mother (the slander charged being that the defendant said that the plaintiff whipped her mother), this evidence being held to relate to the fault or offense charged by the slander. It may doubtless be argued with reason that this is a subdivision of the general trait fully as much as the one now before us. It is to be remembered, however, that that was a civil case, where the evidence was admissible by way of affirmative defense to a part at least of the damages claimed, and that the present is a criminal case, where the state can only rebut the defendant's affirmative proof, which proof was not directed to the specific trait of bribery, but confined to the general trait of honesty and integrity. We find that the question presented is involved in much doubt. It was very inadequately presented in the briefs, was hardly mentioned in the oral argument, and our only light upon it has been obtained from our own researches. As the case must be reversed for the error already discussed, we do not deem it necessary to definitely pass upon this question, but simply to indicate that upon another trial, if evidence of character be introduced, it will be desirable to tread the well-beaten paths.

7. The defendant offered to prove that the reputation of Klefisch for honesty and integrity before the alleged crime was good, but the testimony was rejected and the ruling is complained of. The argument is that the jury, in order to use the testimony of Puls and Seidel concerning the alleged offer of Klefisch to bribe them, must not only be satisfied of the alleged conspiracy between defendant and Klefisch, but must also in effect find Klefisch guilty of bribing Seidel and Puls. Hence it is claimed that the question of Klefisch's guilt was in issue as well as the question of defendant's guilt, and that it was therefore just as competent to prove Klefisch's good character as it was to prove the defendant's because they were equally in issue. No authorities are cited upon this proposition on either side and we have found none upon the precise point. While the argument made in favor of the admission of the testimony is not without some force we are not inclined to adopt it. Klefisch's character is not directly in issue in this case, but at most only collaterally. A verdict of guilty convicts Klefisch of nothing. He must have his own day in court. In many cases where conspiracy is alleged the supposed conspirators are very numerous, and if the character of each were a proper subject of investigation a multitude of extraneous issues might easily be presented tending greatly to confuse and obscure the primary question involved. An analogous situation is presented where two or more persons are jointly indicted for a crime, and it has been directly held in such a case that it is not competent, upon the separate trial of one, to prove the good character of his codefendant who is not upon trial. *Omer v. Comm.* 95 Ky. 353, 25 S. W. 594; *Walls v. State,* 125 Ind. 400, 25 N. E. 457. We conclude that there was no error in the ruling in question.

8. Exceptions were taken to a number of remarks made by the district attorney upon the closing argument to the jury. We do not deem it necessary to enter into the details

of these exceptions. Some were sustained by the court and the jury were told to disregard the statements. As to the others, we have found none which would in our opinion call for reversal of the judgment. No other questions are necessary to be considered.

*By the Court.*—Judgment reversed, and action remanded for a new trial. The superintendent of the Milwaukee house of correction will surrender the plaintiff in error to the custody of the sheriff of Milwaukee county, who will hold him in custody until he shall be discharged therefrom by due process of law.

Timlin, J., took no part.