548

SCOTT, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 15—May 9, 1933.*

For the plaintiff in error there was a brief by *Graves & Earll* of Prairie du Chien and *J. Henry Bennett* of Viroqua, and oral argument by *Mr. Earll*.

For the defendant in error there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt*.

FAIRCHILD, J.   Before the taking of any testimony upon the trial the state moved to amend the information by adding a seventh and eighth count setting forth offenses under sec. 343.04, Stats.   The effect of these counts was to charge the plaintiff in error with being a principal and an accessory

before the fact to the burning of personal property. The original information contained six counts. The first charged the plaintiff in error with burning a dwelling house belonging to himself, contrary to the provisions of sec. 343.01; the second count charged him as an accessory before the fact in the burning of the dwelling house; count three charged him with the burning of a barn contrary to the provisions of sec. 343.02; count four charged him as an accessory before the fact to the burning of such barn; count five charged him with burning a blacksmith shop contrary to the provisions of sec. 343.02; and count six with being accessory before the fact to the burning of the shop. A plea in abatement was interposed on the ground that no preliminary examination had been held as to the charges in the seventh and eighth counts and none had been waived. This plea was overruled and the trial proceeded on the information as amended.

A preliminary examination had been held in which the matters under consideration were inquired into on July 18, 1932. Evidence was then offered tending to show that the plaintiff in error had an equity in the building described in counts one and two, and had personal property located therein; that he arranged for the burning of the building by one Copus. Copus testified on the examination disclosing his part in this affair. The evidence supports the conclusion that there was ample cause to believe it probable that plaintiff in error had committed the crime of arson in causing the burning of his dwelling including the contents thereof. Upon the accused being held to bail to answer, it became the duty of the district attorney to inquire into and make full examination of all facts and circumstances connected with the preliminary examination touching the commission of the offense, and to file an information setting forth the crime committed according to the facts ascertained on such examination, whether it were the offense charged in the

complaint on which the examination was had or not. Sec. 355.17, Stats.

The burning of the dwelling and restaurant so naturally suggested the burning of the contents that the plaintiff in error was put to no disadvantage by the adding of a count charging burning of the personal property. The prosecution was not confined strictly to the particular offense stated in the complaint before the examining magistrate in preparing the information. *Dahlgren v. State,* 163 Wis. 141, 157 N. W. 531; *Bianchi v. State,* 169 Wis. 75, 171 N. W. 639; *O'Keefe v. State,* 177 Wis. 64, 187 N. W. 656. The point raised by the plaintiff in error that no preliminary examination had been held upon the charges included in the amendment was, under the evidence, without force, and the ruling of the trial court upon the plea in abatement was correct.

The plaintiff in error complains of the trial court's refusal to grant his motion requiring the state to dismiss certain counts because he was charged with several distinct and separate offenses and the refusal to require the state to elect upon which it would proceed with the trial. This assignment of error, as well as others depending upon the propriety of the court's ruling in these particulars, are disposed of adversely to the plaintiff in error by sec. 355.14, Stats. This section regulates pleadings in criminal cases, and provides that the information is to be in plain, concise language; that different offenses and different degrees of the same offenses may be joined in one information in all cases where the same might be so joined by different counts in one indictment. In harmony with the spirit which has brought about practical reforms in criminal procedure, some of the technical rules which interfered with the administration of justice were at an early day in this state replaced by more serviceable and effective ones. There has been preserved to the accused the means of protecting his rights without giving him the undue advantage which technical and incon-

sequential rules had built up under a system of administration of criminal law which was harsh and unreasonable. In *Martin v. State,* 79 Wis. 165, 48 N. W. 119, we find authority for the rule followed by the trial court, in the following statement:

"It is insisted that the motion made to the court to compel the district attorney to elect which one of the counts in the information he would rely upon on the trial should have been granted, and that it was error not to grant the motion. Whether the court should have directed the district attorney to elect was a matter very much in the discretion of the trial judge; and such election cannot be demanded as a matter of right. *Newman v. State,* 14 Wis. 402; *State v. Fee,* 19 Wis. 562, 565; *State v. Gummer,* 22 Wis. 442, 443; *Miller v. State,* 25 Wis. 384; *State v. Leicham,* 41 Wis. 577; sec. 4650, R. S.; 1 Bishop, Crim. Proc. § 421 *et seq.,* § 444 *et seq.;* Stephen, Crim. Proc. 154 and cases. These authorities clearly show that it is not error to join in the same information counts stating separate and distinct offenses, and that it is in the discretion of the trial court whether the prosecuting attorney shall be compelled to elect upon which he will proceed. In the case at bar the indications were that separate offenses had been committed in the same locality about the same time, and the circumstances pointed to the defendant as having committed both. Under these circumstances it was proper that the district attorney should charge both offenses in the same information; and it was not an abuse of discretion on the part of the court not to require him to elect, before the evidence was presented, upon which count he would ask for a verdict."

See, also, 1 Wharton, Crim. Proc. 385; *Tarasinski v. State,* 146 Wis. 508, 131 N. W. 889.

These buildings were set on fire in the village of Gays Mills early in the morning of July 6, 1932, in one of which the plaintiff in error had an interest by virtue of a land contract and on the second floor of which he had his dwelling, the lower portion being rented as a restaurant. The other buildings were a blacksmith shop about two blocks in a

northwesterly direction from the restaurant, and a barn about three blocks southerly therefrom. The blacksmith shop and barn were not owned by plaintiff in error; all three fires were extinguished; the greatest damage and practically the only damage done by the fires was in the building in which the plaintiff in error was interested. Copus testified that plaintiff in error promised him $100 for burning that building and had suggested the plan of setting fire to the blacksmith shop and the barn to keep the attention of the fire department from the dwelling and restaurant until the fire there had gotten well under way. While the plaintiff in error claims that Copus had a grievance against him, the evidence shows they were on friendly terms; that Copus was at times engaged in doing odd jobs for plaintiff in error and had very recently been engaged in building a fence for him on one of his lots; that Copus was of questionable character, had been convicted of attempted forgery and of larceny, and had served short sentences for each of the offenses. Copus was a frequent caller at the home of the plaintiff in error, and on occasions shortly before and during the negotiations leading up to the burning of the buildings he and plaintiff in error ate together in the restaurant. Copus testified that the plaintiff in error told him he would have a pail of kerosene oil on his back steps and would conceal it by an arrangement of two boxes; that there would be a can of oil there also but he didn't want any of that used; that a trunk containing some trinkets, clothing, and silverware belonging to the housekeeper had been taken from his dwelling by plaintiff in error to his farm outside of the village of Gays Mills, and that he asked Copus to get it and take it to his, Copus's, father's home. Copus was informed that the plaintiff in error and his housekeeper would be away from Gays Mills on the night between the 5th and 6th of July. Copus engaged his brother to assist him in setting fire to one of the buildings. The brother makes no claim

of ever having had any conversation with the plaintiff in error. The restaurant which had been rented became vacant shortly before the 5th of July.

While Copus was in jail some statements were made by him tending to cast doubt on his testimony given at the preliminary examination and tending to impeach the testimony given by him at the trial, but the circumstances under which these were made were disclosed and were, with all the other testimony, under proper instructions, submitted to the jury. The plaintiff in error preserved a number of exceptions to rulings on the admissibility of evidence grounded on the alleged misjoining of counts in .the information. These exceptions are not well taken; for the evidence of the burning of the dwelling included the entire plan and not only permitted but required the admission of the evidence as to the attempted burning of other buildings. Concerning a conversation with one Lee Peak, the plaintiff in error was asked this question: "Q. Since the preliminary hearing did you talk with him at any time and ask him to testify that a certain person in Gays Mills had tried to hire him to set these fires?" to which plaintiff in error answered "No, sir." Upon the examination of Mr. Peak in rebuttal there was testimony as follows: "Q. Well, did Mr. Scott ask you to testify in this case? A. He asked me if this certain party hadn't told me that they were going to set these fires to these buildings. Q. Certain party? A. Yes. Q. Did he name the party? A. No. Q. Did he say whether that certain party had asked you to set these fires? A. No. Q. Is that correct? A. No, he asked me if this party hadn't told me that they were going to set the fire to the building. Q. And then what did you answer? A. I told him no, that I had had no conversation with him whatever. Q. What did he say then?" This question was objected to as not proper rebuttal. The court directed the examination to proceed, and the witness answered: "If I could remember of

them telling me that he could use me. *Q.* Did he say any more? *A.* He said there would be more money in it for me than there would be to work out."

The objection by plaintiff in error to this testimony is based on the theory that it was only impeaching testimony and that a proper foundation was not laid therefor. A somewhat similar situation arose in the examination of Mrs. Johnston and in the testimony given by Elger Johnston. The method used in presenting this testimony was one usually followed in an effort to impeach a witness by showing prior contradictory statements, but there was a different purpose for the introduction of this testimony. Circumstances occurring after the commission of an offense which are relevant and tend to show in some degree a consciousness of guilt may be placed in evidence. Among such circumstances are efforts to suppress evidence and attempts to influence witnesses. *Martineau v. May,* 18 Wis. *54. In the *Martineau Case* this court referred to the case of *State v. Rohfrischt,* 12 La. Ann. 382, with approval, saying:

"The prosecution was allowed to prove that the defendant had attempted to bribe one of the witnesses of the state to swear falsely. Such acts by a party would seem fairly admissible as circumstantial evidence which the jury are entitled to consider." See, also, 2 Wharton, Crim. Ev. § 923.

1 Jones, Commentaries on Evidence (2d ed.), p. 181, is authority for the right to draw an inference from attempts such as these witnesses charged the plaintiff in error with. "The fabrication of evidence raises an adverse inference, the weight of which is in proportion to the effort made and risk incurred in manufacturing the false testimony," and that author points out that the rule is well settled that all efforts, directly or indirectly, to destroy, fabricate, or suppress evidence may be shown not as part of the *res gestæ* but in the nature of an admission properly chargeable to

the person making the attempt to fabricate or destroy testimony. There appears no reversible error in the rulings of the court with relation to the reception of such testimony.

The plaintiff in error offered evidence concerning his character and reputation in the communities where he resided prior to his living in Gays Mills. No witnesses upon this part of his defense were offered from that village where he had lived for some five years or from the county in which it is situated. When the state came to meet the character evidence, witnesses were called who testified concerning the plaintiff in error's reputation in that community, and this testimony was to the effect that his reputation there as to being a law-abiding citizen was bad. Five of these witnesses resided in the community; a sixth was the fire marshal, Julius Krug, a resident of Madison, Wisconsin. This witness testified that he had frequently been in the community where plaintiff in error resided, staying over night, "day after day, and weeks at a time;" that during such stays and for the four years preceding the fires in question he had become familiar with the reputation of the plaintiff in error as to being a law-abiding citizen and knew that reputation to be bad. Error is assigned because of the admission of this testimony, and the objection is based upon the fact that this witness was not a resident in the community and was not qualified to testify concerning the character of the plaintiff in error. This is not a situation where one was sent into a community for the express purpose of forming an opinion as to reputation of one charged with crime. Krug's testimony shows him familiar with this reputation long before the fires occurred, and discloses a familiarity with life in the village which warranted the reception of his testimony as to the general reputation of Scott in the community prior to the alleged offense. The fact that the witness was a fire marshal and engaged in investigating sus-

picious fires was referred to. But by a question put by the learned representative of the attorney general's office there was eliminated any possibility of a belief that prior fires were in any way chargeable to the plaintiff in error. The specific question was: "Did you investigate fires previous to this fire that were not connected in any way with the defendant?" and the answer was in the affirmative. The admission of the testimony given by this witness, in view of all the facts and circumstances present, cannot be said to have been erroneous. *Schultz v. State,* 133 Wis. 215, 228, 113 N. W. 428.

In his instructions to the jury the learned trial judge did not at all times emphasize the distinction which existed between the counts in the information, and error is claimed because of this; but a consideration of the entire charge leaves no question but that the jury understood that they could not find the plaintiff in error guilty on any count unless they were satisfied of his guilt on that count beyond a reasonable doubt. The court said: "If you should find the defendant guilty on one or more counts of the information, and not on any other count, you will make your verdict read 'not guilty' of the count or counts upon which you find the defendant not guilty." And the form of the verdict was well designed to keep before the jury the necessity of passing upon the guilt or innocence of the accused as to each count. During the time that the jury were deliberating they sought further instructions as to the different counts, and were told that there were submitted to them for their consideration four counts: the second, the fourth, the sixth, and the eighth, and then, having in mind that the evidence as to guilt relating to each count was in effect the same, the court took occasion to say: "If he is not guilty of one he is not guilty of any of them. . . . You understand the defendant has pleaded not guilty to all those counts." The

court did not attempt to direct the course to be taken by the jury. A little later, when he was again instructing the jury in response to a statement by a juror, "We seem to have a little trouble in knowing just how much weight to give some of the evidence," the judge said: "These are peculiarly matters for the jury to determine, the weight to be given to the witnesses. You are judges of that, but you should confer with one another and listen to the views that each have on these matters and see if you cannot harmonize your views and come at an understanding. It is your duty to do that as jurors, if you can do it. Of course no juror is expected to surrender his or her honest deliberate judgment as to what the verdict should be. . . ." The court as a practical matter told the jury that if they believed Copus was telling the truth they were warranted in finding Scott guilty on all counts; that if they did not believe him as to one count not to believe him as to any. They had been duly instructed as to the presumption of innocence and reasonable doubt. We find no prejudicial error with respect to the instructions.

There was a motion for a new trial based on newly-discovered evidence; supporting affidavits were filed referring to a conversation with a member of the jury and also describing statements made by one or another of the neighbors at different times after the occurrence of events involved in this case. The facts alleged are met by explanations and modifications in the affidavits offered by the prosecution. A thorough study of these does not disclose any reason for interfering with the ruling of the court below on this motion.

We have carefully considered all the evidence offered, all the affidavits, the instructions given to the jury, we are mindful of the fact that the accusing witness is an accomplice, but have reached the conclusion that the jury properly arrived at its verdict. The acts of the plaintiff in error in a number of particulars furnished corroborating

testimony. His reason for causing the removal of the trunk and his adroit management by which he arranged that it would be found in the possession of Copus after the fire where it would speak of theft by Copus and would furnish a reason for its being missing from his residence, is an item of evidence showing preparation for the crime. While the plaintiff in error does not admit that he asked Copus to go to his farm and get the trunk, he does admit that he moved it from his residence in the village to his house on the farm, and his explanation, therefore, is capable of casting doubt on its veracity. The attempts to secure evidence which would tend to destroy the effect of the testimony which he may be presumed to have known Copus was going to give, warrant the inference of a consciousness of facts which one guilty of planning the commission of the crime would have. The securing from Copus of the written note in which Copus indicated a willingness to change his testimony upon the payment of $300 was brought into the case through a friend of the plaintiff in error. This friend testified that he knew nothing about the writing of the note; that he didn't know what it contained until after he delivered it to the plaintiff in error and it was then shown to him. The value of this as defensive matter was more than offset by the explanation of Copus that he was induced to write the note, that it did not contain a truthful statement, and the cross-examination of the witness himself, who then admitted that the note was written with a pencil owned by that witness, was written in his presence, and handed to him in an unsealed condition. All together the evidence furnishes proof sufficient to support the verdict of guilty.

*By the Court.*—Judgment affirmed.