State v. Nergaard, 124 Wis. 414.

---

THE STATE, Respondent, vs. NERGAARD, Appellant.

*February 22—March 14, 1905.*

*Fish and game: Preservation: Constitutional law: Unlawful shipment: Forfeitures: Pleading: Evidence: Cross-examination of defendant: Place where fish were taken: Court and jury: Degree of proof necessary.*

1. The state has the right to enact reasonable police regulations to preserve for its people the fish and game within its limits. It may prohibit the shipment or sale of more than a given quan-

State v. Nergaard, 124 Wis. 414.

tity within a given time by any one person; and such a pro-
hibition is not an unconstitutional infringement upon private
property rights.

2. Under sec. 1498g, Stats. 1898, making it the duty of district at-
torneys to prosecute actions for violation of the fish and game
laws when complaint is made by the state warden or any
deputy, the complaint in an action in justice's court to recover
a forfeiture for such a violation, if it appears on its face to be
made by one of the officers named, need not state that it is
made on behalf of the state, notwithstanding the general pro-
visions of sec. 3602 in that regard.

3. In an action to recover a forfeiture for a violation of the fish
laws, it was not a prejudicial error to permit defendant, on his
cross-examination, to be asked as to a prior arrest for a similar
offense, where in answering the question he voluntarily stated
that he had been convicted of such offense.

4. It was not error nor an abuse of discretion in such a case to
compel defendant, on his cross-examination, to answer the ques-
tion whether he was not constantly under surveillance of the
officers of the law while in business as a fish dealer at another
place, and whether they did not frequently take fish from his
possession.

5. The question being whether certain pike, which had been
shipped to defendant from O. on Lake W., had been taken from
that lake, testimony of game wardens having jurisdiction in
that vicinity that at about the time of the shipment pike were
caught in large quantities in said lake, more than sufficient to
satisfy the local demand, and that they knew of none being
shipped in from other points, was admissible.

6. Testimony of a witness that she knew the kind of pike taken
from Lake W., and that those in question were not the same
kind of fish, but were much larger, was sufficient to render im-
proper an instruction that it appeared by the undisputed evi-
dence that the pike in question were taken from said lake.

7. Sec. 23, ch. 358, Laws of 1901 (providing, in effect, that ship-
ments of fish from inland points in the state shall come under
the provisions of law pertaining to shipment of fish taken from
the inland waters of the state), has no application to a case
where the shipment complained of was from a city situated
upon the outlying waters of the state, although the fish had
previously been shipped to that city from an inland point. In
such a case, therefore, the fact that the fish had originally been
shipped from an inland point did not raise a conclusive pre-
sumption that they had been taken from inland waters.

8. Under secs. 3294, 3295, Stats. 1898, in a civil action to recover a
    forfeiture for a violation of the fish and game laws which is
    not a misdemeanor, the state need not establish its case be-
    yond a reasonable doubt, but only by a preponderance of the
    evidence.

APPEAL from a judgment of the circuit court for Kenosha
county: E. B. BELDEN, Circuit Judge.     Reversed.

This is an action to recover a forfeiture for an alleged vio-
lation of ch. 358, Laws of 1901, as amended by ch. 437, Laws
of 1903, known as the fish and game law.   The defendant
was convicted in justice's court and appealed to the circuit
court, where the action was tried before a jury.   The state's
evidence tended to show that on January 18, 1904, the de-
fendant, who was a wholesale and retail dealer in fish at Keno-
sha, received from one Budzisz, a fish dealer in Oshkosh,
seven barrels of pike, weighing from 185 pounds to 290
pounds per barrel; that on the afternoon of the same day six
barrels of the shipment were taken from the defendant's store,
by an expressman employed by him, to a barn in the city of
Kenosha; that at about 5 o'clock a. m. upon the following
morning these six barrels were taken from the barn in a sleigh
accompanied by one Christensen, an expressman, and C. Ner-
gaard, the defendant's brother, and carried in the sleigh sev-
eral miles southwestward and across the state line to the vil-
lage of Russell, in the state of Illinois, where they were
shipped by rail to a fish dealer in Chicago; that said Nergaard
was an employee in the defendant's store in Kenosha.   There
was no direct evidence as to where the fish were caught, but
there was evidence by deputy game wardens familiar with the
conditions on Lake Winnebago to the effect that in January
large quantities of pike are caught in Lake Winnebago, and
that they know of none being shipped in from any other
points.   The defendant's testimony tended to show that the
six barrels of fish which were taken to Russell had been sold
by him to his brother and that he had nothing to do with them

after such sale; and, further, that the fish so shipped were not the identical fish received from Oshkosh.

The jury returned a verdict for the state, and judgment was rendered thereon for a forfeiture of $50 and costs, from which the defendant appeals.

For the appellant there was a brief by *Cooper, Simmons, Nelson & Walker,* and oral argument by *John B. Simmons.*

For the respondent there was a brief by *Albert E. Buckmaster,* district attorney, and by the *Attorney General* and *Walter D. Corrigan,* first assistant attorney general, and oral argument by *Mr. Buckmaster* and *Mr. Corrigan.*

WINSLOW, J.  The portion of the fish and game laws of the state which is claimed to have been violated by the appellant is sec. 22, ch. 358, Laws of 1901, as amended by sec. 20, ch. 437, Laws of 1903, which provides in substance that it shall be unlawful to transport or offer for transportation to any point within or without the state any fish taken from the inland waters of the state, except: (1) One package (not including trout) containing not more than twenty pounds (or in lieu thereof two fish of any weight), provided not more than one shipment a week is made by the same person; (2) any package of fish from inland waters (except trout) containing more than twenty pounds may be transported to any point within this state if accompanied by the shipper and marked as provided by law, provided that pike from outlying waters may be transported from an outlying water point to points within the state without being accompanied by the shipper, except during the closed season; (3) the section does not apply to certain varieties of fish which are specifically named and do not include pike; (4) shipments of trout of any variety taken from inland waters, not exceeding twenty pounds in weight, may be made to points within or without the state when accompanied by the shipper, not more than one shipment per week being made by the same person.  Any vio-

lation of the section is punished by a forfeiture of not less than $25 nor more than $100, and by seizure and confiscation of the shipment.

The charge made in the present case is that the defendant violated the law by transporting from Kenosha to a point outside of the state more than two packages of fish, each containing more than twenty pounds, taken from the inland waters of the state, to wit, Lake Winnebago. That the packages claimed were in fact transported from Kenosha to a point outside of the state at the time charged stands uncontradicted in the case, and the only questions of fact in serious dispute upon the trial were (1) whether the fish in question were pike taken from the inland waters of the state, and (2) whether the defendant by his agents transported them from Kenosha to Russell. Before proceeding to the consideration of the detail errors which the appellant assigns upon the trial of these questions of fact, however, it seems proper to consider the main question raised in the case, namely, the question of the constitutionality of the law.

The appellant claims that this section violates several provisions of both the state and federal constitutions, namely: sec. 1, art. I, of the constitution of the state, which declares the inherent right of all men to life, liberty, and the pursuit of happiness; also sec. 13 of the same article, which provides that the property of no person shall be taken for public use without compensation; also the fifth amendment to the federal constitution, which provides that no person shall deprived of life, liberty, or property without due process of law, and that private property shall not be taken for public use without just compensation; also the fourteenth amendment to the same constitution, which prohibits a state from abridging the privileges or immunities of citizens of the United States, and from depriving any person of life, liberty, or property without due process of law, and from denying to any person the equal protection of the laws. As these several claims all are

based upon one contention, namely, that fish, when lawfully
taken, become private property of the captor, with the abso-
lute right of disposition, they may all be considered together.
As above indicated, the appellant's claim is that when fish
have been lawfully taken they become private property, and
that any interference with the use, sale, or disposition thereof
is an unconstitutional infringement upon property rights.
The appellant's counsel, with much ability, contends that this
claim is justified by the decision of this court in the case of
*Rossmiller v. State,* 114 Wis. 169, 89 N. W. 839; and he also
cites in support thereof *State v. Saunders,* 19 Kan. 127, and
*Territory v. Evans,* 2 Idaho, 658, 23 Pac. 115. As to the two
cases last named, they both proceeded upon the idea that a
statutory prohibition of the right to ship out of the state game
lawfully taken within the state was a violation of the inter-
state commerce clause of the federal constitution, and, as these
cases were distinctly overruled upon this point by the United
States supreme court (which is necessarily the final tribunal
on this subject) in the case of *Geer v. Connecticut,* 161 U. S.
519, 16 Sup. Ct. 600, we do not feel called upon to consider
them seriously. In the *Rossmiller Case* it was held by this
court that ice formed upon the public waters of the state was
not state property in a proprietary sense, and that a law
which attempted to declare it the absolute property of the
state, and authorize the state to sell it for revenue, and inter-
dict its transportation out of the state unless purchased of
the state, violated both the fourteenth amendment of the fed-
eral constitution and sec. 13, art. I, of the state constitution.
There was here involved no question of police regulation, only
the question of the right of the state to traffic in ice formed
on the public waters of the state, as though it had an absolute
proprietary ownership thereof; and while the right of the peo-
ple to take and appropriate to themselves, as part of their
common heritage, such ice, is fully recognized and classed
with the right of fishing and fowling, the paramount right of

State v. Nergaard, 124 Wis. 414.

the state to enact reasonable police regulations to preserve
for its people the continued existence of a valuable food sup-
ply is expressly recognized.  It is this latter question which is
involved in the present case.

We believe it has never been seriously denied (and it is now
certainly too late to deny) that the state has the right, in the
exercise of its police power, to make all reasonable regulations
for the preservation of fish and game within its limits.  It may
ordain closed seasons; it may prescribe the manner of taking,
the times of taking, and the amount to be taken within a given
time, as it may deem best for the purpose of preserving and
perpetuating the general stock.  In the absence of legislation
the citizen may doubtless pursue, take, and dispose of fish and
game as he sees fit and without restraint, so long as he vio-
lates no private rights; but when the state steps in and makes
proper police regulations, the citizen takes his right of fishing
or fowling hampered by such regulations; in other words, his
right is the right which the state leaves to him, no more and
no less.  The modes in which the state may limit the amount
to be legally taken are various.  It may doubtless interdict
the taking of certain game for a series of years, if it deem
such course necessary for the preservation of the species, or
it may prohibit the taking of more than a certain amount by
any one person within a given time.  We do not perceive why
it may not also, as a means of accomplishing the same end,
prohibit the shipment or sale of more than a given quantity
within a given period of time.  It is well understood that the
most serious danger to the preservation of fish or game lies
in the taking thereof in large quantities for the purposes of
sale in great cities, and it would seem that the most effective
way to prevent the depletion of the waters by the wholesale
taking of fish therefrom may be to prohibit the shipment or
sale in large quantities or at frequent intervals.  But whether
this method of regulation be the most effective method or not,
we see no reason for pronouncing it unreasonable or uncon-

stitutional. This entire subject has been so exhaustively and satisfactorily treated by the supreme court of the United States in the case of *Geer v. Connecticut, supra,* where the validity of a similar law of the state of Connecticut was upheld, that it seems unnecessary to enlarge upon it further.

We pass now to the consideration of the detail errors alleged:

1. This is an action to recover a forfeiture, originally brought before a justice of the peace, and the sworn complaint was made by one Charles B. Reinardy, who stated therein that he is a deputy of the state fish and game warden, but did not state that he made the complaint on behalf of the state. It is claimed that this omission is fatal, for the reason that by sec. 3602, Stats. 1898, governing all complaints in civil actions before justices upon which a warrant of arrest is to be issued, it is required that the sworn complaint shall be made by the plaintiff or by some one in his behalf. A similar provision with regard to affidavits for attachment has uniformly been held to mean that, where the affidavit is made by a third person, the affidavit must contain the statement that it is made on behalf of the plaintiff. *Maguire v. Bolen,* 94 Wis. 48, 68 N. W. 408. We should probably consider this controlling, were it not for the fact that it is provided by sec. 1498*g,* Stats. 1898, that it shall be the duty of district attorneys to prosecute actions for violations of the fish and game laws when complaint is made by the state fish and game warden or any deputy. This provision relating to this special class of actions seems to clearly indicate the legislative purpose to be that, where the complaint appears on its face to be made by one of the officers named, it shall be sufficient to initiate the prosecution, and we so hold.

2. The defendant was a witness in his own behalf, and upon his cross-examination it appeared that he had been a fish dealer in Oshkosh before he came to Kenosha. He was then asked whether he was not constantly under surveillance

of the officers at Oshkosh, and whether they did not frequently take fish from his possession. Objection was made to the question, but it was overruled, and the witness practically admitted that such was the fact. Subsequently he was asked whether he had not been arrested for violation of the fish laws in Oshkosh, and objection to the question was overruled on the ground that the evidence bore on his credibility, and he answered that he was arrested once and fined. In the charge of the court the jury were instructed that this evidence was only to be considered as affecting the defendant's credibility, and had no other bearing on the case. In *Thornton v. State,* 117 Wis. 338, 93 N. W. 1107, it was held error to ask a witness whether he had not been previously arrested for another offense, but, that question having been at once followed by a question and answer showing previous conviction of an offense following that arrest, it was held that there was no prejudicial error in the proof of his arrest, because this was a fact necessarily inferred from the fact of his conviction. So, in the present case, the witness having voluntarily testified, without objection, to his subsequent conviction, we cannot regard the ruling as to the proof of arrest as prejudicial error.

But the question still remains whether it was error to compel the witness to answer the question as to his being under constant surveillance of officers of the law while in business at Oshkosh. The general principle that a witness should not be asked and cannot be compelled to answer questions as to the commission of previous offenses for which he is not on trial, except in certain well-defined classes of cases, is very thoroughly established, and has been frequently laid down by this court. *Fossdahl v. State,* 89 Wis. 482, 62 N. W. 185; *Buel v. State,* 104 Wis. 132, 80 N. W. 78; *Paulson v. State,* 118 Wis. 89, 94 N. W. 771; *Barton v. Bruley,* 119 Wis. 326, 96 N. W. 815. The question whether he was not constantly under surveillance of the officers of the law while in business

at Oshkosh does not, however, come within this category. There has always been a certain latitude allowed to trial courts as to the cross-examination of a witness with regard to his previous life. A considerable discretion has been vested in such courts with regard to inquiries into the previous life and character of one who has offered himself upon the witness stand as a person worthy of belief. While questions regarding previous supposed crimes are not allowed, it has been very wisely deemed that both court and jury are entitled to know the manner of life of the witness to a reasonable extent—where he has been, and what have been his occupations, and the circumstances under which he has lived. All this has been deemed as a legitimate field of inquiry, not as bearing upon the question of his guilt or innocence of the offense for which the witness is presently being tried (if he be the party on trial), but as having a proper bearing upon his credibility as a witness. The field within which such inquiries may be made is necessarily ill defined, but it is very well recognized, and the question as to how far cross-examination in this direction may go is almost universally said to be a question resting in the sound discretion of the trial court, whose opportunity for judging how far such a cross-examination is justified by the circumstances of the case and the appearance of the witness on the stand is far better than that of an appellate court. The rule is wise and helpful in the administration of justice, as trial judges frequently have occasion to realize; and, while great care should be taken to see that a witness is not unnecessarily degraded, an appellate court will not reverse a judgment where such inquiries have been permitted, except for abuse of discretion. This rule was recognized in *Buel v. State, supra,* and is laid down in the textbooks. 3 Jones, Evidence, § 842. We are unable to say that there was any abuse of discretion in this respect in the present case.

3. Two deputy game wardens, called by the state, one of

whom had jurisdiction over the city of Oshkosh, and the other on Lake Winnebago in the immediate vicinity, were allowed, against objection, to testify in substance that during January pike were caught in Lake Winnebago, at and near Oshkosh, in large quantities, and more than sufficient to satisfy the local demand, and they knew of none being shipped in from other points. We see no error in the admission of this evidence. While not as persuasive as more direct evidence, it legitimately tended to show that the pike in question were taken from Lake Winnebago.

4. As stated at the outset of this opinion, there were but two disputed questions of fact in the case: (1) Whether the fish transported were taken from the inland waters of the state, and (2) whether the defendant by his agents transported them to Russell. Upon the first of these questions the trial court instructed the jury in substance that, it appearing by the undisputed evidence that the fish were shipped from Oshkosh, the fact that the fish were taken from inland waters was conclusively proven. This instruction seems to have been based upon sec. 23, ch. 358, Laws of 1901, which provides in substance that any package of fish offered or received for transportation at any point in the state not situate on any of the outlying waters of the state shall come under the provisions of law pertaining to the shipment of fish taken from the inland waters of the state. The meaning of this provision seems to be that, when fish are shipped from any point in the state not situated on the outlying waters, it makes no difference where the fish were taken. We express no opinion as to the validity of this section. Conceding it to be valid, we are unable to see how it applies in any way to the present case. It is true that the fish were originally shipped from Oshkosh, which is upon inland waters, to Kenosha, which is upon outlying waters, but it was not charged, nor does the evidence show, that the defendant had anything to do with this shipment. It was made by Mrs. Budzisz, acting for her

husband, and accompanied by her to Kenosha, and we have been referred to no evidence which even tends to show that it was in violation of law. At all events it is certain that the defendant has not been prosecuted for making this shipment, but only for the shipment from Kenosha to Russell. Clearly, therefore, the last-named section has no application to the case, because the point where the shipment began was Kenosha, which is upon the outlying waters of the state, and hence not covered by the section. The logical result of the ruling complained of would seem to be that if a shipment of red herring or codfish of greater weight than twenty pounds were made from Oshkosh to Kenosha, they could not be shipped thence to any point, because they must be conclusively presumed to have been taken from the inland waters of the state.

It was attempted upon the argument to sustain the instruction on the ground that the evidence that the pike in question were taken from Lake Winnebago was undisputed. We are unable to so hold. While there was evidence to this effect amply sufficient to sustain a verdict had the question been submitted, we cannot say that it was uncontroverted. There was direct evidence by Mrs. Budzisz to the effect that she knew the kind of pike taken from Lake Winnebago, and that the pike in question were not the same kind of fish, but were a great deal larger. The question was for the jury under proper instructions, and the charge in this respect was erroneous.

5. The court charged the jury that it was not necessary that the state establish its case beyond a reasonable doubt, but only by the preponderance of the evidence, and this instruction is claimed to be erroneous. We find no error in the charge in this respect. The action is brought to recover a forfeiture for an act which is not a misdemeanor. Sec. 3294, Stats. 1898, provides that, in all such cases not otherwise provided for (and the present case is not), the forfeiture may be sued for and recovered in a civil action. Sec. 3295 pro-

vides that "every such action . . . shall be brought in the name of the state of Wisconsin, and the summons, pleadings and *proceedings* therein shall be the same as in civil actions." In view of these express statutory provisions, there is no room for controversy.

We have discovered no other claims of error that require discussion. The judgment must be reversed for the single error in the charge hereinbefore discussed.

*By the Court.*—Judgment reversed, and action remanded for a new trial.