City of Madison, Appellant, v. Geier, Respondent.

*March 3—June 4, 1965.*

For the appellant there were briefs by *Edwin C. Conrad,* city attorney, and *David Pappas,* assistant city attorney, and oral argument by *Mr. Pappas.*

For the respondent there were briefs and oral argument by *John Kasimatis* of Madison.

A brief *amicus curiae* was filed by *Julian Bradbury* and *Jean G. Setterholm,* both of Madison, for the League of Wisconsin Municipalities.

HALLOWS, J. By sec. 299.30 (5), Stats., the circuit court on an appeal in a municipal forfeiture action is granted the same power as this court under ch. 274 to review, affirm, reverse, or modify the appealed judgment. In such an appeal the circuit court makes no finding of fact; hence, on this appeal this court begins where the appeal to the circuit court began, *i.e.,* the finding of the trial court. In ordinance-violation cases, sometimes called forfeiture actions, as in other civil cases, unless the findings of the trial court are against the great weight and clear preponderance of the evidence they will not be set aside on appeal even though contrary findings might have been made with evidence in their support. *Milwaukee v. Thompson* (1964), 24 Wis. (2d) 621, 130 N. W. (2d) 241; *Will of Freitag* (1960), 9 Wis. (2d) 315, 101 N. W. (2d) 108. But, to apply the great-weight-and-clear-preponderance test a court's finding must at least be supported by evidence sufficient to meet the burden of proof for that type of case.

The circuit court was of the view the proof failed in quality and quantum necessary to convict the defendant of an ordinance violation. The Madison city ordinance sec. 12.86 is identical with the criminal sec. 346.94 (2), Stats.,

which provides, *"Racing.* No operator of a motor vehicle shall participate in any race or speed or endurance contest upon any highway." The statute does not provide what burden of proof is applicable to violations of municipal ordinances modeled after criminal statutes.

The record does not show what standard was used by the trial court, but the circuit court tested the evidence by the "clear, satisfactory, and convincing evidence" rule of burden of proof. This burden, while greater than required in ordinary civil cases, is not as great as "beyond a reasonable doubt" used in criminal cases. There seems to be some confusion in the trial courts as to the proper burden of proof applicable to forfeiture actions when the acts constituting the violation also constitute a crime under state statutes. Sixty years ago we held in *State v. Nergaard* (1905), 124 Wis. 414, 102 N. W. 899, that in a civil action to recover a forfeiture for a violation of a fish and game law, which was not a misdemeanor, the state need not establish its case beyond a reasonable doubt but only by the preponderance of the evidence. But this case did not solve any problem relating to forfeiture cases which involved criminal acts.

At that time it was well established there existed three different burdens of proof, although the two standards applicable to civil cases were not always uniformly stated. Thus in *Poertner v. Poertner* (1886), 66 Wis. 644, 29 N. W. 386, the burden of proof applied in civil cases involving fraud, criminal offenses, and other culpable liability was stated as "clear and satisfactory preponderance of the evidence," which in *Klipstein v. Raschein* (1903), 117 Wis. 248, 94 N. W. 63, was equated to the more-preferred form of stating the test in terms of "clear and satisfactory evidence." In *Klipstein,* which involved fraud, the court also stated this formulation meant substantially the same as the instruction "clear preponderance of the evidence" used by the trial court. The three burdens of proof were again reviewed in *Kuehn v. Kuehn* (1960), 11 Wis. (2d) 15, 104

N. W. (2d) 138, in which we stated the preferential way of stating the middle standard of proof which was applicable to civil actions involving criminal acts and fraud was in terms of "clear, satisfactory, and convincing evidence."

We considered ordinance forfeiture cases so far as the elements of the violation were concerned when the acts also amounted to a crime to be in that class of civil actions which involved fraud, undue influence, criminal acts, reformation, mutual mistakes, and others, which public policy requires to be proved by evidence which is clear, satisfactory, and convincing. We saw no difference in such a civil case being prosecuted by a private citizen and a municipality. We recently pointed out in *Milwaukee v. Wuky* (1965), 26 Wis. (2d) 555, 133 N. W. (2d) 356, such forfeiture cases at best are in fact a hybrid proceeding—one has no right to a special verdict; pleas of guilty, of not guilty, or of *nolo contendere* are made instead of an answer; the action is commenced by warrant or summons; and one may be arrested and bail provisions apply.

Perhaps some confusion arose out of whether the middle standard applied to forfeiture actions involving crimes because of our language in *Shawano County v. Wendt* (1963), 20 Wis. (2d) 29, 121 N. W. (2d) 300. In that case we said the violation of a county ordinance which also amounted to a crime need not be proved by the criminal-law burden of proof but by "the clear preponderance of the evidence." We thought it clear as was held in *Bengston v. Estes* (1952), 260 Wis. 595, 599, 51 N. W. (2d) 539, and in *Odegard v. North Wisconsin Lumber Co.* (1907), 130 Wis. 659, 110 N. W. 809, that "the clear preponderance of the evidence" was not synonymous with the rule "fair preponderance of the evidence" and required a greater burden of proof than was necessary in ordinary civil cases.

The preferred formulation of the rule now appears in Jury Instructions Nos. 205, 210, and 211, Wis J I—Civil,

Part I, and specifically for forfeiture actions in Instruction No. 2050, Wis J I—Criminal,[1] which we approve for use in all forfeiture actions involving criminal acts. Although the circuit court applied the proper burden-of-proof standard, we differ with the circuit court over the quality of the evidence produced and believe it met the standard.

The defendant argues that racing has five elements which must be proved to sustain a conviction under the ordinance, namely, intent, prior agreement, competition, high speed, and distance. We think the first three are but shades of the same conceptual notion that a race is an intentional competition in respect to some phase of locomotion. The dominant characteristic of a race is the awareness or intent of competition in respect to speed and distance to prove superiority in performance in some respect. Normally, to constitute a race there must be an acceptance or competitive response to the awareness of the challenge; such response may be the result of prearrangement or it may come into existence on the spur of the moment. There need be no prior formal or express agreement. In respect to automobiles the element of competition resulting from some understanding involving a challenge and a response may often reasonably be inferred from the speeds and the relative positions of the cars. *Nelson v. Nason* (1961), 343 Mass. 220, 177 N. E. (2d) 887;

---

[1] "2050  BURDEN OF PROOF: FORFEITURE ACTIONS

"In determining the guilt or innocence of the defendant, you should scrutinize the evidence with the utmost care and caution. You should act with all the judgment, reason, prudence, and discrimination you possess. The burden of proving the defendant guilty of every element of the offense charged is upon the (City) (County) of ———. Such burden is to satisfy or convince you to a reasonable certainty by evidence that is clear, satisfactory, and convincing that the defendant is guilty as charged (in the complaint).

"If after a fair consideration of all the evidence bearing on the question, you become so satisfied or convinced that the defendant is guilty, then you should find him guilty but if not so satisfied or convinced, you should find the defendant not guilty."

and *State v. O'Connor* (1962), 76 N. J. Super. 246, 184 Atl. (2d) 83.[2]

Intermediate appellate courts interpreting statutes prohibiting racing on public highways have generally held that a race is a contest of speed or acceleration. *State v. Dionne* (1962), 24 Conn. Supp. 59, 186 Atl. (2d) 561, considered a race as a contest of speed, a competitive trial of speed, but not necessarily of illegal speed. It was also considered "not necessary that there be some prior agreement or understanding or some prearrangement before there can be a race; there can be a race by total strangers on the spur of the moment." In *State v. Hughes* (1963), 2 Conn. Cir. 75, 194 Atl. (2d) 722, a race was considered "a contest of speed—involving the idea of competitive locomotion—in which competition is an essential element." It was pointed out the idea of a race could be entirely subjective in the minds of each party and there may be a race in fact by reason of their competitive acts which could be determined by reasonable and logical inferences from observable circumstances. However, two cars may proceed abreast at various speeds even exceeding the legal limit without racing. In *State v. Hart* (1963), 2 Conn. Cir. 27, 193 Atl. (2d) 903, such was the situation but it was held there was no race because the drivers were merely calibrating the tachometer on one car whose speedometer was broken with the speedometer in the other car. In *People v. Squilleri* (1962), 37 Misc. (2d) 291, 231 N. Y. Supp. (2d) 443, the defendant was convicted of "drag racing" as a violation of the New York Vehicle and Traffic Law prohibiting "races or contests for speed." The court held the statute encompassed drag

---

[2] In some states a statutory *prima facie* violation of the racing law is made upon a showing the parties used a common starting point and thereafter compared their contested relative speeds. See Ill. Rev. Statutes (1963), Ch. 95½, sec. 145.1; Rev. Code of Ohio, sec. 4511.251; Washington Rev. Code, 46.48.050.

racing, which it defined as an acceleration contest between automobiles.

In his contention that to constitute a race there must be high speed and distance the defendant relies on *In re Harvill* (1959), 168 Cal. App. (2d) 490, 335 Pac. (2d) 1016, where cars traveled at 50–55 miles per hour for over one-half mile; *Anen Motor Vehicle Operator License Case* (1961), 194 Pa. Super. 379, 169 Atl. (2d) 600, speed in excess of 65 miles per hour for over a mile; *Miller Motor Vehicle Operator License Case* (1962), 197 Pa. Super. 315, 179 Atl. (2d) 251, speed of 40–45 miles per hour for one-fifth of a mile; *State v. Hughes* (1963), 2 Conn. Cir. 75, 194 Atl. (2d) 722, over 75 miles per hour for over six-tenths of a mile; and *Nelson v. Nason, supra,* speed over 70 miles an hour for over a mile. While racing convictions were upheld in those cases it does not follow that lesser speeds or shorter distances would have resulted in acquittals.

Speed and distance are relative and depend on the nature of the race. A drag race is of short distance to contest superiority in acceleration which may or may not exceed the speed limit. Some races may test the highest speed over a given distance, others only the result. There was neither great speed nor acceleration in the modern sense in the famous race between the tortoise and the hare in Aesop's fable—but who denies there was a race? We hold that speed to constitute an element of a race under the ordinance does not have to be excessive or illegal and that the distance need only be of such length that it may be reasonably inferred therefrom in connection with other facts that a race was in progress within that distance.

The evidence which the trial court thought was sufficient and the circuit court thought was not is somewhat in dispute. The arresting officer testified that on the evening of May 13, 1964, at approximately 10:15 p. m. he was parked in an

unmarked squad car on the south side of East Main street in front of a drugstore. East Main street is four lanes and two parking lanes wide and forms one of the sides of the capitol square in the city of Madison. He was preparing a report and heard sounds of vehicles behind him, of roaring engines and the squealing of tires. He turned around and saw two vehicles approximately at Monona avenue about 175 feet from where he was parked. He saw these vehicles proceed toward him on Main street from the stoplight at the intersection accelerating very rapidly. He stated in his opinion the cars were operating at their maximum and attained a speed of 35 to 40 miles per hour. The posted speed limit on East Main street is 25 miles per hour. The two cars were in the front line of traffic at the stoplight, side by side. They left the other cars behind them and when they came abreast the squad car they immediately slowed down. Both cars turned the next corner of the square. One, a 1964 Falcon came to a stop and parked along the street; the other, a 1957 Ford driven by the defendant, proceeded half a block and turned off the square and proceeded slowly in the general direction of the defendant's home. The defendant was stopped a few blocks from the square by the officer. The officer identified the defendant's car and the other car as those whose motors were revving and tires were squealing.

According to the testimony of the defendant, when he was stopped by the officer he asked the officer, "Was I speeding or did you hear any tires squealing," and the officer answered, "No." Defendant also testified he was returning from a fishing trip, the car was equipped with standard transmission, he did not know the driver of the other car, he had no conversation with him at the stop sign and did not try to keep even with the other car but just pulled away from the stop, traveling from 15 to 25 miles per hour. He told the officer he did not meet the other driver earlier in the day, "I stated to the officer that I might have seen him

at Union Grove. It's a drag strip at Union Grove." He was not asked nor did he testify whether he had revved up his engine or squealed his tires.

James Hollis, a passenger in defendant's car, corroborated defendant's testimony and in addition stated he did not hear more than the usual revving of engines, did not recall any squealing of tires, and stated he recognized the officer in an unmarked car when they were at the Monona stoplight and it would have been foolish to even think about racing.

The trial court believed the traffic officer and disbelieved the defendant and his witness. Credibility of a witness, of course, is for the trial court. The circuit court in analyzing the officer's testimony stated the traffic officer could have been correct or erroneous in concluding the defendant and the other car were racing. The court considered there was no proof of intention to engage in a contest and the noise produced by revving of motors and squealing of tires could have come from any one of several automobiles waiting for the stoplight to change.

The inferences to be drawn from the observable facts is for the trial court, and unless they are inherently impossible or unreasonable they should be accepted on appeal. The arresting officer's opinion that it was the defendant's and the other car whose motors were being revved and whose tires made the squealing noise is in the nature of an identification based upon an inference from circumstantial evidence having probative value. *State v. John* (1960), 11 Wis. (2d) 130, 104 N. W. (2d) 379. The officer's opinion of speed was evidence of competition. Swietlik, Opinion Evidence in Wisconsin—Non-Expert Witness, Vol. 3, No. 4, Wisconsin Continuing Legal Education (Oct. 1963), pp. 61, 72. The possibility or even a probability the officer was wrong in concluding the defendant and the other car caused the incriminating noise does not necessarily prevent the proof from reaching the required standard. However, if the offi-

cer's testimony were all the evidence, we would be inclined to agree with the circuit court. However, the unusual inquiry of the defendant concerning the squealing of tires might well be considered an implied admission and this taken with the officer's testimony is sufficient to sustain the burden of proof.

The city's request to tax costs for pages in excess of 40 in its brief is denied because the brief might well have been confined to 40 pages, and its motion to strike the respondent's brief is denied as moot.

*By the Court.*—Judgment reversed.

FAIRCHILD, GORDON, and HEFFERNAN, JJ. (*concurring in part; dissenting in part*). We agree that the judgment should be reversed. We respectfully dissent from that portion of the majority opinion which relates to burden of proof in regard to forfeitures.

Under the law in Wisconsin, the applicable standard of the burden of proof in forfeiture cases has been a "mere preponderance." This was the express holding of *State v. Nergaard* (1905), 124 Wis. 414, 102 N. W. 899, and this ruling has never been disturbed. At page 425, the court stated:

"The court charged the jury that it was not necessary that the state establish its case beyond a reasonable doubt, but only by the preponderance of the evidence, and this instruction is claimed to be erroneous. We find no error in the charge in this respect. The action is brought to recover a forfeiture for an act which is not a misdemeanor."

In *Oshkosh v. Lloyd* (1949), 255 Wis. 601, 608, 39 N. W. (2d) 772, Mr. Justice HUGHES, although dissenting from the conclusions of that case, stated the generally accepted rule to be:

". . . that in submitting a verdict to the jury of guilty or not guilty the courts may instruct that the jury can find the

defendant guilty from the simple preponderance of the evidence rather than from evidence which satisfies it of his guilt 'beyond a reasonable doubt,' as in criminal procedure."

It should be noted that the case with which Mr. Justice HUGHES was concerned involved a charge of drunken driving under a municipal ordinance—a violation that is also a crime under state law.

The mere-preponderance rule in forfeiture cases has never been challenged since 1905 in any presentation to this court. Even in the case at bar, counsel did not volunteer argument on the question of burden of proof either in the trial court or here on appeal; nevertheless, without any compelling reason, the majority has now chosen to alter this basic rule of substantive law which has been operative in the trial courts of Wisconsin for at least the past sixty years.

Two of the writers of this opinion, one as a trial judge and the other as a city attorney and teacher of municipal law, can attest from their personal experience that the mere-preponderance test has been regularly accepted and applied without hesitation in forfeiture cases in Wisconsin.

There are many civil cases in which proof of a crime is the gravamen of the action. For example, in *Poertner v. Poertner* (1886), 66 Wis. 644, 29 N. W. 386, there was a divorce action based on the crime of adultery, and in *Trzebietowski v. Jereski* (1914), 159 Wis. 190, 149 N. W. 743, there was an action for damages based on the crime of seduction. In each case the underlying act in the civil action was required to be proved by clear and convincing evidence, the same as is required for the proof of fraud. The criminal acts involved in those cases, however, were instances of *malum in se, i.e.,* acts "involving illegality from the very nature of the transaction, upon principles of natural, moral, and public law." Black's Law Dictionary (4th ed.), page 1112. Forfeitures on the other hand are usually, though not always, prescribed for acts which, like traffic offenses, are

*malum prohibitum, i.e.,* "an act which is not inherently immoral, but becomes so because its commission is expressly forbidden by positive law." Black's Law Dictionary (4th ed.), page 1112. Apparently where a person is claimed to have been guilty of fraud, or a criminal act which is inherently evil, or involves a wilful breach of good order, it is deemed good policy even in a civil action to require a greater degree of certitude before a judicial finding of such guilt than is required for determining other facts in civil cases. But the reasons of policy which underlie the requirement of a higher degree of certitude in such instances do not, in our opinion, apply generally to forfeiture cases.

Except for *State v. Nergaard, supra,* the only case involving a forfeiture which has been referred to in the majority opinion is *Shawano County v. Wendt* (1963), 20 Wis. (2d) 29, 121 N. W. (2d) 300. In that case, the question of the burden of proof was not raised; it was neither briefed nor argued. If the use of the words "clear preponderance" in the *Shawano Case* represented the adoption of a new standard, it was indeed a casual and oblique way of changing a well-established rule.

No other case relied upon by the majority involved a forfeiture. *Kuehn v. Kuehn* (1960), 11 Wis. (2d) 15, 104 N. W. (2d) 138, was a case involving fraud, and the cases relied upon were those like *Poertner* and *Trzebietowski* which were not forfeiture actions, but in which alleged criminal acts *malum in se* or otherwise involving a wilful breach of good order were of vital significance.

In our opinion, there is neither demand nor need for this change in the burden of proof as to ordinance violations. For over half a century the courts and the legislature have accepted the mere-preponderance rule. The judicial council has heretofore concluded that the burden of proof required

by law in forfeiture cases was a preponderance of evidence as distinguished from either the criminal burden of "beyond a reasonable doubt" or the so-called middle burden which the majority now adopts. Minutes of Judicial Council, October 24, 1958, p. 7, 345.37. At a later meeting, a motion was put to the subcommittee that "the burden of proof be changed from the regular civil burden to that required in cases of fraud, *i.e.,* to clear and convincing evidence instead of a preponderance of evidence." Minutes of Judicial Council, December 5, 1958. This motion was lost.

In response to an invitation by this court, the chairman of the committee on Wisconsin Jury Instructions—Criminal, has advised us in writing that it seemed to the committee that the statement in the *Kuehn Case* concerning civil actions involving criminal acts "required" the committee to adopt Jury Instruction No. 2050. Although it also appears that the committee felt that it was in the interest of justice to place such greater burden upon the prosecution in actions for forfeiture under traffic ordinances we surmise that the committee would not have felt free to adopt Jury Instruction No. 2050 but for the statement in *Kuehn.* As previously pointed out, the statement in the *Kuehn Case* is supported only by decisions of the type of *Poertner* and *Trzebietowski* and such statement ought, in our view, to be qualified so as not to apply to forfeiture actions. In our opinion the specimen instruction should be expressly disapproved.

Henceforward it appears that there will be one burden of proof in forfeiture cases which involve crimes and a different burden of proof in those which do not involve crimes. Since there is no ready reference source to determine whether an ordinance involves a crime, we anticipate that this distinction will create uncertainty among litigants. Presumably counsel will have to scrutinize the statute book to

determine whether the ordinance violation charged is set forth in the precise same terms as an enactment by the legislature.

As a further example of the confusion which may result from the majority opinion, we need only ask what the majority proposes to do in the ordinary personal-injury action when the essential act of negligence is also a violation of a criminal traffic law. Thus, in a tort action for damages, when there is a claim that the speed was in excess of the statutory limit, must such speed be proved by evidence that is clear, satisfactory, and convincing? The thrust of the majority opinion would logically compel this result, since the issue arises in a "civil action involving criminal acts;" however, such a conclusion appears wholly unwarranted. The majority opinion unfortunately raises grave questions in regard to matters that most practitioners have regarded as settled aspects of the law.