## STATE OF CONNECTICUT *v.* ROSHUN C. JONES
## (AC 25398)

Lavery, C. J., and DiPentima and McDonald, Js.

Argued February 10—officially released October 18, 2005

*Gary A. Mastronardi*, for the appellant (defendant).

*Elizabeth M. Moseley*, special deputy assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich*, state's attorney, and *Vincent J. Dooley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Roshun C. Jones, appeals from the judgment of conviction, rendered after a trial to the jury, of, among other charges,[1] two counts of misconduct with a motor vehicle in violation of General Statutes § 53a-57 (a). The defendant claims that the state presented insufficient evidence to sustain his conviction of the two counts of misconduct with a motor vehicle because the state failed to establish that his conduct caused the deaths of two victims. We disagree.

In considering the defendant's claim, we review the trial transcript and the exhibits. See *State* v. *Stagnitta*,

---

[1] The defendant was also convicted of reckless endangerment in the first degree, racing and assault in the third degree.

74 Conn. App. 607, 609, 813 A.2d 1033, cert. denied, 263 Conn. 902, 819 A.2d 838 (2003).

The following evidence was presented at trial. At approximately 5:30 p.m. on September 23, 1999, the defendant was driving a red-orange 1990 Ford Mustang, with his friend, Jason Benoit. While driving on Route 138 in Jewett City, the defendant and Benoit passed a green Mustang, driven by Dennis Waidler, who had as a passenger his girlfriend, Renee Hasbrouck. The defendant then turned onto Route 12, traveling north toward Plainfield.

Waidler then passed the defendant as they traveled north along Route 12. In that area, Route 12 is a two lane highway with northbound and southbound lanes. At that time, Hasbrouck made a derogatory remark about the defendant's Mustang, and the defendant began to race with Waidler and, in an attempt to pass Waidler, accelerated his vehicle to sixty-five miles per hour in second gear. Driving at high speed, the two Mustangs, Waidler's followed by the defendant's, proceeded to pass two vehicles, one of them a tractor trailer. After passing the tractor trailer, the defendant drove his Mustang into the southbound lane on Route 12 so as to drive alongside Waidler. At that point, an approaching vehicle in the southbound lane slowed so that the defendant could move back into the northbound lane behind Waidler. Once the southbound vehicle passed, the defendant again moved his Mustang into the southbound lane alongside Waidler.

The defendant and Waidler continued driving north on Route 12 at a high rate of speed, at times side by side, approaching Toper Road. A vehicle driven by Chad Langlois, which had stopped at the intersection of Toper Road and Route 12, turned left into the northbound lane of Route 12. Waidler, driving at a speed in excess of sixty-five miles per hour and fast approaching the

intersection of Route 12 and Toper Road, slammed on his brakes and swerved into the southbound lane so as not to collide with the rear of Langlois' vehicle. In the southbound lane, Waidler veered into the path of an oncoming southbound motorcycle driven by Ian Cloutier, who had as a passenger Jaclyn Cinque, the twelve year old daughter of his fiancee. Waidler slowed his vehicle and moved his Mustang back into the northbound lane in an attempt to avoid the motorcycle. The left rear of Waidler's car, however, collided with the motorcycle, throwing Cloutier and Cinque from the bike. Waidler lost control of his vehicle and it flipped three or four times before coming to rest on its roof on an embankment on the eastern side of Route 12, next to the northbound lane. Both Waidler and Hasbrouck were thrown from the vehicle as it flipped.

The defendant and Benoit heard the crash and saw the accident. They saw Waidler swerve to avoid the vehicle that had turned onto Route 12, then collide with the motorcycle, and saw Waidler and Hasbrouck thrown out of the vehicle as it flipped over. A piece of metal dislodged from Waidler's tire rim in the collision, and as the defendant drove past it, the debris punctured his Mustang's left front tire. The defendant continued north on Route 12 for approximately one-half mile before realizing he had a flat tire. He then drove his vehicle to the right side of the road, made a U-turn and stopped the car on the right side of the southbound lane on Route 12.

The defendant and Benoit walked back to the scene of the accident, where Cloutier, Cinque and Hasbrouck lay severely injured, with people tending to them. At the accident scene, the defendant stated that he was scared, that he did not mean to "do it" and repeatedly stated, "We were only passing." Cloutier, who had been thrown from his motorcycle in the accident, lay unresponsive, with the lower portion of his left leg severed.

At the edge of the southbound lane, Cinque also lay unresponsive in the fetal position. The motorcycle remained in the middle of the southbound lane. Waidler's green Mustang had come to rest on its hood about 100 feet north of the motorcycle. Hasbrouck had been thrown from Waidler's Mustang and was lying unconscious, suffering from an open head wound and severe chest injuries. Waidler, in shock and hysterical, sustained minor lacerations to his face and hands. Within minutes of the accident, emergency medical personnel arrived at the scene and began treating the three victims. Cinque and Hasbrouck were taken to a hospital in Norwich, where they were pronounced dead on arrival. A helicopter transported the comatose Cloutier to Hartford Hospital. He survived, but sustained severe brain injuries and the loss of his left leg.

The defendant had a brief conversation with Waidler at the accident scene. Shortly thereafter, the police arrived, and the defendant and Benoit spoke with Officer Maurice Remillard of the Plainfield police department. Remillard asked them if they had been involved in the accident, to which the defendant and Benoit responded that they had not. The defendant gave Remillard his name and telephone number, after which Remillard told the defendant that he could go home.

At the defendant's request, some of his friends went to the area to change the flat tire on his Mustang and retrieve the vehicle. Before they could change the tire, the police noticed the deflated tire and the piece of green metal protruding from the tire. The police intervened, impounded the car and arranged for it to be towed from the scene. The police requested that the defendant and Benoit return to the scene, and when they returned, asked them if they had been racing. The defendant gave a written statement, denying that he had been racing at the time of the accident.

After further investigation, the police arrested the defendant.[2] While in police custody, the defendant gave another statement, in which he stated that, as Waidler passed the defendant's vehicle on Route 12 entering Plainfield, Hasbrouck called to him, "Your car ain't s__t," and that, in the defendant's mind, he began to race with Waidler. He stated that he accelerated to sixty-five miles per hour in second gear. He added that at the intersection of Route 12 and Toper Road, about one mile after the race started, Waidler struck a motor-cycle traveling in the opposite direction.

"The standard of review we apply to a claim of insuffi-cient evidence is well established. In reviewing the suffi-ciency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so con-strued and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defen-dant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possi-

---

[2] An arrest warrant also had been obtained for Waidler, but he committed suicide before it could be served.

ble doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Perkins*, 271 Conn. 218, 246–47, 856 A.2d 917 (2004).

The state claimed that the defendant's racing with Waidler was criminally negligent conduct that caused the deaths of Cinque and Hasbrouck. The defendant argues that the state failed to establish that his conduct caused the two deaths. He contends that the evidence does not support a finding that he was racing with Waidler at the time of the collision. After reviewing the record and the evidence presented at trial, we disagree with the defendant.

Section 53a-57 provides that "[a] person is guilty of misconduct with a motor vehicle when, *with criminal negligence in the operation of a motor vehicle, he causes* the death of another person." (Emphasis added.) The definition of criminal negligence set forth in General Statutes § 53a-3 (14) provides that "[a] person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation . . . ." Under § 53a-57, the state was required to prove that the defendant was operating a motor vehicle, that he caused the

death of another person, and that he failed to perceive a substantial and unjustifiable risk that the manner in which he operated his vehicle would cause that death. The failure to perceive that risk must constitute a gross deviation from the standard of care that a reasonable person would observe in the situation. See *State* v. *Carter*, 64 Conn. App. 631, 637, 781 A.2d 376, cert. denied, 258 Conn. 914, 782 A.2d 1247 (2001). Further, "[t]o prove causation, the state is required to demonstrate that the defendant's conduct was a proximate cause of the victim's death—i.e., that the defendant's conduct contributed substantially and materially, in a direct manner, to the victim's injuries and that the defendant's conduct was not superseded by an efficient intervening cause that produced the injuries." (Internal quotation marks omitted.) *State* v. *Browne*, 84 Conn. App. 351, 362–63, 854 A.2d 13, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004).

In *State* v. *Alterio*, 154 Conn. 23, 25, 220 A.2d 451 (1966), the defendant was racing at high speed on a highway at night with another driver on his right when that driver's vehicle struck a vehicle that had entered his travel lane at an intersection. A passenger in the vehicle that had entered the intersection was killed. Id. After the collision, the defendant's vehicle was found off the road to the left of the opposing lane of traffic before the intersection. Id., 27–28. Our Supreme Court upheld the jury instruction that contact between the defendant's vehicle and the deceased or the vehicle in which the deceased was riding was not required. Id., 28.

In *State* v. *Dionne*, 24 Conn. Sup. 59, 186 A.2d 561 (1962), the Appellate Division of the Circuit Court defined racing as "a contest of speed; a competitive trial of speed." (Internal quotation marks omitted.) Id., 62. Furthermore, it held that "[i]t is not necessary that there be some prior agreement or understanding or some prearrangement before there can be a race; there

can be a race by total strangers on the spur of the moment." Id., 63. In *State* v. *Hughes*, 2 Conn. Cir. Ct. 75, 194 A.2d 722 (1963), the court observed that "a race is a contest of speed—involving the idea of competitive locomotion—in which competition is an essential element." Id., 78, citing *State* v. *Dionne*, supra, 62. No prior agreement is necessary, as there can be a race by total strangers on the spur of the moment. *State* v. *Hughes*, supra, 78, citing *State* v. *Dionne*, supra, 63. The Supreme Court of Wisconsin, in *Madison* v. *Geier*, 27 Wis. 2d 687, 135 N.W.2d 761 (1965), cited *Dionne* to the same effect, stating that competition may arise at the spur of the moment when one racer accepts the other racer's challenge to prove superiority in competition. Id., 693–94.

We conclude that there was evidence that the defendant and Waidler were racing as they sped northward along Route 12 toward the Toper Road intersection. Jason Croteau, who was driving his vehicle north along Route 12 at the time the accident occurred, testified that two Mustangs, green and red, quickly approached him from behind and passed him at a high rate of speed approximately two miles south of the collision scene. Croteau testified that the two cars were driving very close to each other as they sped northward around the curves in Route 12. He also testified that he saw the two cars pass a tractor trailer as they continued north. Clayton Rockwell, the driver of that truck, testified that first a green Mustang passed him and moved back into the northbound lane and then a red Mustang passed him, but remained in the southbound lane, driving alongside the green Mustang. Rockwell testified that the two cars passed him as he drove by a tire company, Plainfield Auto Sales, located approximately seven-tenths of one mile south of the collision scene. He then testified that the two Mustangs raced northward until he lost sight of them. When he could see the cars again,

Rockwell testified, they were heading toward a vehicle driving in the southbound lane of Route 12.

Michael Maheu, the driver of that southbound vehicle, testified that he observed the two Mustangs approaching him as he traveled south along Route 12 and that he had to slow his vehicle so that the red Mustang driving toward him in the southbound lane could move back into the northbound lane, behind the other Mustang. Rockwell testified that he could still see the two Mustangs after Maheu's vehicle passed, that the red Mustang then drove alongside the green Mustang and then that the two cars again raced out of sight. Thomas Gauvin, who had stopped his vehicle at the intersection of Roode Road and Route 12, approximately one-half mile south of the accident scene, testified that he observed two Mustangs pass, racing northward alongside each other. A finder of fact could infer from that testimony that the defendant and Waidler continued their race beyond the Roode Road intersection and were still racing when Waidler collided with Cloutier's motorcycle just north of the intersection of Toper Road and Route 12.

June Beaudreau testified that at approximately 5:30 p.m. on the evening of September 23, 1999, she was walking east on Toper Road, heading toward her brother's house at the corner of Route 12 and Toper Road, when she saw two cars speeding north on Route 12 toward the Toper Road intersection. Testimony was presented that a line of sight from Toper Road south along Route 12 is approximately two-tenths of one mile. She testified that she observed the cars side by side, approaching Toper Road. Beaudreau believed the cars to be traveling much faster than the posted speed limit of forty miles per hour, at about ninety to 100 miles per hour. Beaudreau testified that she heard a crash moments after she observed the vehicles racing side by side at a high rate of speed toward the Toper Road

intersection. A house on the northwest corner of the intersection obstructed Beaudreau's view of the collision, but the collision occurred only two-tenths of one mile north of the point where Beaudreau, looking south, could observe the two Mustangs speeding northbound side by side. A finder of fact reasonably could have concluded that the defendant and Waidler passed the Toper Road intersection traveling at a rate of speed well in excess of the posted speed limit and by doing so, were continuing their race. The evidence reasonably supports a finding that Waidler accelerated north of Toper Road to prevent the defendant from passing him in a contest of the vehicles' speed.

The defendant refers to inconsistencies between Beaudreau's testimony and the written statement she gave to the police during the investigation of the accident. In that statement, Beaudreau stated that she saw one car, a green Ford Mustang, speed by the Toper Road intersection. Beaudreau, however, testified that she did not read the statement before signing it and that at the time she gave the statement to the police, she told them that she had seen the two cars racing. "Inconsistencies in testimony and witness credibility are matters that are within the exclusive purview of the jury to resolve at trial." (Internal quotation marks omitted.) *State* v. *Aponte*, 249 Conn. 735, 756, 738 A.2d 117 (1999). The jury in this case reasonably could have credited Beaudreau's testimony despite the contents of her statement to the police.

The defendant's statements and the testimony of Officer Richard Jordan, an expert witness trained in accident reconstruction, further supports the conclusion that the defendant was racing with Waidler at the time of the accident. The defendant testified that he was 800 feet behind Waidler when the accident occurred, but he and Benoit, his passenger, both testified that they saw a vehicle turn onto Route 12 from Toper Road,

Waidler brake and swerve in order to avoid hitting that vehicle, Waidler's vehicle colliding with the motorcycle, Waidler lose control of his vehicle and Waidler and Hasbrouck thrown from the vehicle as it flipped over. Jordan testified that in his opinion, the defendant's vehicle was very close to Waidler's vehicle at the time of the collision and that the defendant made some type of maneuver in an attempt to avoid the debris in the road, some of which punctured the left front tire of the defendant's car. The detail of the defendant's observations and the fact that he did not have time to slow his car enough to avoid the metal in the road reasonably supports the conclusion that the defendant was following Waidler much closer than the 800 foot distance to which he testified.

Other evidence further supports that inference. Chad Langlois, the driver of the vehicle Waidler swerved to avoid just before hitting the motorcycle, testified that when he stopped at the intersection of Toper Road and Route 12, he looked to his left and saw a motorcycle and looked to the right and saw no vehicles approaching. Langlois could see an estimated two-tenths of one mile to the south, the direction from which no northbound vehicles were approaching, at the intersection, Officer Jordan testified that a vehicle traveling in excess of sixty-five miles per hour could cover that distance in ten seconds or less, and Jordan estimated that Waidler's vehicle was traveling faster than sixty-five miles per hour at the time of the accident, with the defendant's vehicle following closely behind. Langlois testified that as he drove into the northbound lane on Route 12, he saw a green Mustang come into view behind him, slide by and flip over. He also testified that he saw two people come out of that car as it continued to flip over. When Langlois drove his vehicle to the side of the road and stopped, he testified, he saw a red Mustang stopped ahead of him.

Furthermore, Russell Chipperfield, who testified that he was driving on Route 12 and passed the scene of the accident soon after it had occurred, encountered the defendant and testified that the defendant stated, "Man, I'm scared. I'm scared. I don't know what to do. But I'm scared man. I didn't mean to do it. We were only passing." Chipperfield testified that the defendant kept repeating, "we were only passing," and that the defendant then started foaming at the mouth. The defendant's physical reaction to the events and his statements to Chipperfield undermine his contention that he was traveling 800 feet behind Waidler and not racing at the time of the collision. The defendant also gave a written statement to the police. After denying at first that he was racing with Waidler, he admitted that in his mind he began to race with Waidler on Route 12, reaching a speed of sixty-five miles per hour, about one mile before the Toper Road intersection. Although the defendant testified that his statement was untrue and a product of police coercion, whether to credit the statement was a determination to be made by the jury. See, e.g., *State v. McFarlane*, 88 Conn. App. 161, 169, 868 A.2d 130, cert. denied, 273 Conn. 931, 873 A.2d 999 (2005).

The defendant argues that because no eyewitness testified that he was racing side by side with Waidler at the time of the collision, his conduct was not the proximate cause of the two victims' deaths. He testified that he never raced with Waidler and that the accident was caused by Waidler swerving to avoid the Langlois vehicle. He refers to the testimony of Joseph Beausoleil, who was driving his vehicle south on Route 12 and testified that he was approximately four car lengths behind Cloutier's motorcycle when Waidler hit the motorcycle. Beausoleil testified that at approximately 5:30 p.m. on September 23, 1999, he was driving southbound four car lengths directly behind Cloutier's motorcycle. He had an unobstructed view of all northbound

traffic on Route 12 and testified that he observed two northbound cars in the distance, rapidly approaching. He also testified that the two vehicles appeared to be traveling at speeds well above the posted speed limit of forty miles per hour. Beausoleil testified that both cars were driving in the northbound lane, one behind the other. The defendant claims that this was evidence from which the jury had to conclude that he and Waidler were not racing. To be involved in a race, however, the defendant and Waidler were not required to drive alongside each other at all times, as one sought to keep ahead of the other. Accelerating ahead of the following car to remain in front would be part of a race on a two lane highway. From Beausoleil's testimony, the jury could have reasonably inferred that the defendant and Waidler still were engaged in a race as they approached from the south.

The defendant also refers to Beausoleil's contradiction of Beaudreau's testimony and Beaudreau's written police statement. However, whether to accept all or part of Beausoleil's testimony, that of Beaudreau or Beaudreau's written police statement, and that of the defendant, was the function of the jury. See, e.g., id., 169. Furthermore, "[a]lthough some evidence may be inconsistent with the state's theory of the case, the jury is not bound to credit only that evidence to the exclusion of evidence consistent with the state's theory." (Internal quotation marks omitted.) *State* v. *Jackson*, 257 Conn. 198, 209, 777 A.2d 591 (2001).

The defendant also argues that Langlois' vehicle, and not his own, was the cause of Waidler's being in the southbound lane when he struck the motorcycle. Even if the Langlois vehicle contributed to the accident, the defendant is not relieved of liability if there is, between his unlawful conduct and the deaths of Cinque and Hasbrouck, a causal connection, unbroken by an independent and efficient cause. See *State* v. *Munoz*, 233

Conn. 106, 126–27, 659 A.2d 683 (1995); see also *State v. Shabazz*, 246 Conn. 746, 773, 719 A.2d 440 (1998) (*Berdon, J.*, dissenting), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999). In *State v. Alterio*, supra, 154 Conn. 30, the court stated: "[O]nly if the conduct of [a] driver [other than one of the racers] was shown to be the independent and efficient cause of [a] death would the state fail to meet its burden. If . . . the requisite causal connection was established between an unlawful act of . . . the [defendant] and the death [of the victim], then [the defendant], who joined in the common design to commit the unlawful act [of racing], would be responsible." Id. Accordingly, we conclude that the cumulative effect of the eyewitness testimony and the defendant's statements supports the defendant's conviction on the two counts of misconduct with a motor vehicle.

The judgment is affirmed.

In this opinion the other judges concurred.